UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anderson & Koch Ford, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Ford Motor Company,<br><br>Defendant. | Case No. 0:23-cv-00762 (PJS/DTS)<br><br>**FORD MOTOR COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO CIVIL RULE 12(B)(6)** |

## I.    INTRODUCTION

Plaintiff's Complaint challenges Ford's plan to a establish new Ford dealership (the "New Dealership") in Forest Lake, Minnesota. This Court should dismiss Plaintiff's claims because the Minnesota Motor Vehicle Sale and Distribution Act ("MVSDA"), Minn. Stat. § 80E.01, *et seq.*, establishes an exclusive procedure for dealers to challenge a manufacturer's decision to add a new dealership of the same line-make within a statutorily defined "relevant market area." Minn. Stat. § 80E.14. This statute contains specific procedures for notice, right of protest, and a limitation on who can file a protest before a new dealership may be opened. *Id*.

Notwithstanding the existence of the specific statute regulating the establishment of new dealerships, Plaintiff filed its Complaint under two more general sections of the MVSDA regarding proposed changes to territory that impact "sales or service obligations or investments" and "sales effectiveness." Minn. Stat. § 80E.13(k), (p). Plaintiff also

asserts a claim that Ford breached the implied covenant of good faith and fair dealing, despite not asserting a corresponding breach of contract claim. Plaintiff chose this path because it lacks standing to challenge Ford's proposed dealer establishment under Section 80E.14's exclusive remedy.  Plaintiff cannot end-run standing requirements by couching its dispute in terms of other alleged statutory violations. Plaintiff's Complaint is clear: it wants to prevent Ford from establishing the New Dealership. Plaintiff's Complaint should therefore be dismissed.

## II.     STATEMENT OF FACTS

Plaintiff is an independently owned and operated Ford dealership located at 5577 St. Croix Trail, North Branch, Minnesota 55056. (Doc.1-1, p. 7 at ¶¶ 5, 12.) On December 2, 2022, Plaintiff received written notice from Ford of its intent to change its "Dealer Locality" by reallocating census tracks to the New Dealership, which will be located approximately 17.5 miles from Plaintiff's current location. (Doc. 1-1, p. 9 at ¶¶ 21-22.) Plaintiff objected, in writing, to this proposed change and the establishment of the New Dealership, demanding that Ford rescind both proposals. (Doc. 1-1, p. 11 at ¶ ¶ 26-27). Ford refused and Plaintiff filed suit on February 27, 2023.

Plaintiff asserts four claims against Ford. First, Plaintiff claims that Ford's proposed territory change and the establishment of the New Dealership would substantially impair its "sales or service obligations or investments" in violation of Section 80E.13(k). (Doc. 1-1, p. 17-18 at ¶¶ 52-56.)[1] Second, Plaintiff claims that Ford's proposed territory change

---

[1] This section addresses proposed "modifications" of a dealer's franchise.  Plaintiff has failed to allege how its Dealer Agreement will be modified and Ford denies that any

and the establishment of the New Dealership constituted an improper change in Plaintiff's area of sales effectiveness in violation of Section 80E.13(p). (Doc. 1-1, p. 18-19 at ¶¶ 57-62). Under both claims, Plaintiff seeks monetary damages and "an injunction against… the establishment of the Proposed New Dealership in the Dealer's Locality." (Doc. 1-1, , 18-19 ¶¶ 56, 62.)

Plaintiff's third cause of action seeks a declaratory judgment declaring, in part, that "Ford is enjoined from approving or establishing the Proposed New Dealership or any other competing franchise within Anderson & Koch's Dealer's Locality." (Doc. 1-1, p. 20 at ¶ 67(ii).) Finally, Plaintiff asserts a claim that Ford breached the implied duty of good faith and fair dealing that arises in non-sales contracts in Minnesota but failed to allege that Ford was in breach of any specific contract. (Doc. 1-1, p. 20-21 at ¶¶ 69-73.)

### III.   LAW & ARGUMENT

#### A.   Standard of Review

Under Civil Rule 12(b)(6), a motion to dismiss for failure to state a claim should be granted where it is clear no relief could be granted under any set of facts that could be proved consistent with the complaint. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 1832 (1989). Thus, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Id.* at 326, 109 S. Ct. at 1832. Whether a complaint states a cause of action is a question of law. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986).

---

modification is at issue. Locality changes are specifically anticipated under Plaintiff's Ford Dealer Agreement (Doc. 1.1, p. 27 at ¶ 1(j)). For this independent reason, Count I of the Complaint should be dismissed as a matter of law.

### B. Section 80E.14 Provides the Exclusive Procedure for Challenging an Add Point.

Most states have enacted motor vehicle franchise statutes containing "add point"[2] provisions addressing when a manufacturer can establish a new dealership. *See, e.g.*, Mo. Rev. Stat. § 407.817; Neb. Rev. St. § 60-1422. These add-point statutes typically provide that existing dealers of the same brand, located in a limited geographic area surrounding the proposed new point, are entitled to notice and an opportunity to protest. The MVDSA includes such an add-point provision (the "MN Add Point Statute"), which follows this common structure. *See* Minn. Stat. § 80E.14. The MN Add Point Statute sets out the manner and method by which an existing dealer can challenge the establishment of a new dealership, and what a franchisor must prove when its proposed add point is challenged. *Id*. The MN Add Point Statute also limits who may bring such a challenge. Under the MN Add Point Statute the manufacturer must provide written notice of its intent to all existing dealership(s) within that relevant market area, which is defined as "a radius of ten miles around an existing dealership." *Id*. Only existing dealership(s) within the "relevant market area" has a specified time-period in which it can "commence a civil action… challenging the establishment… of the new motor vehicle dealership." *Id.*

Here, Plaintiff (which is not within the statutory relevant market area) did not attempt to challenge the New Dealership pursuant to the MN Add Point Statute. Instead, Plaintiff is attempting an end run around the Add Point Statute – likely due to its lack of

---

[2] It is standard industry practice to refer to a manufacturer or distributor's appointment of a new dealership franchise as an "add point" or a "new point."

4

standing to assert a claim - by asserting that the establishment of the New Dealership will result in a change to its assigned territory. Plaintiff's attempt to circumvent the specific procedures set out in the MN Add Point Statute is contrary to the clear intent of the Minnesota Legislature and should be rejected as a matter of law.

Courts have consistently held that where, as here, the legislature establishes specific add point procedures and limits which dealers have standing to use them, those procedures provide the exclusive means for challenging an add point. The reasoning in these decisions is based on principles embraced by Minnesota law and should be followed here.

In *Parktown Imports Inc. v Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. 2009), an existing dealer sought to block the establishment of a new dealership under a general provision of the franchise statute barring franchisors from "capricious, bad faith, or unconscionable" conduct generally. The Missouri Supreme Court rejected this attempt, holding that the specific add-point provision was the sole remedy, which only gave protest rights to dealers of the same line-make in a six-mile radius of the proposed new dealership. *Id.* The Court held that because the Missouri add-point statute contained an express, location-based standing provision for objecting to a new dealership, that this showed a "clear intent" that the add-point provision "be the sole mechanism to bring challenges to the establishment or relocation of new motor vehicle dealerships." *Id.* at 673.

Similarly, in *American Honda Motor Co. v. Bernardi's, Inc.*, 432 Mass. 425, 435 (Mass. 2000), two dealers challenged an add point under a general provision of the Massachusetts Dealer Act barring "arbitrary, in bad faith, or unconscionable" conduct by a franchisor. The Massachusetts Supreme Court held that the add point provision was the

5

sole provision by which a dealer could seek relief from a "prospective additional dealership." *Id.* at 427. Allowing competing dealers to protest under more general, "bad faith" conduct provisions would essentially nullify the legislature's add point provision. *Id.* at 435.

In *JJM Sunrise Automotive L.L.C. v. Volkswagen Group of Am., Inc.*, 997 N.Y.S. 270, 46 Misc. 3d 755 (Sup. Ct., Nassau County, 2014), a New York court rejected a franchised dealer's challenge to the establishment of a new dealership and held that the add-point provision in New York's Franchised Motor Vehicle Dealer Act (VTL 463(2)(cc)) provided the sole mechanism for a New York franchised motor vehicle dealer to challenge the establishment of a new dealership. *Id.* at 285. Relying upon the reasoning of *American Honda* and *Parktown*, the court found that allowing a dealer to challenge add-points through other general sections of the New York Dealer Act "would render meaningless the relevant market area limitation in the Dealer Act and the cause of action that it creates." *Id.* at 280; *see also Luxury Autos of Huntington, Inc. v. Volkswagen Group of Am., Inc.*, 2015 WL 9998814, *7 (Sup. Ct., Nassau County, 2015) ("[T]he addition/relocation of a same line make dealership outside the relevant market area creates no Dealer Act right of action."); *Don Simmons, Inc., et al. v. Subaru of Am., et al.*, Sup. Ct., Chemung County, Mar. 15, 2018, O'Shea, J., Index No. 2017-1930 (same), copy attached as Exh. 1.

Minnesota law includes the same principles relied upon in these cases. Specifically, Minnesota courts adhere to the widely accepted cannon of statutory construction that "when a conflict exists between two or more statutory provisions, the specific provisions

control." *Koehen v. Flagship Marine Co.*, 947 N.W. 2d 448, 454 (Minn. 2020). Consequently, the Court should apply Minnesota's Add Point Statute in the same manner - as the exclusive means to challenge an add point. Like the complaining dealers in *Parktown*, *American Honda*, *Luxury Autos*, *Simmons,* and *JJM Sunrise Automotive*, Plaintiff attempts to use general provisions of the MVDSA to challenge the establishment of the New Dealership instead of the MN Add Point Statute. Like the statutes at issue in *Parktown*, *American Honda*, *Luxury Autos*, *Simmons,* and *JJM Sunrise Automotive*, the MN Add Point Statute: (1) provides specific notice procedures; (2) outlines a specific challenge procedure; and (3) includes a standing provision that limits who can raise a challenge. If these specific provisions are not given exclusive effect, the MN Add Point Statute would be a nullity. This is particularly true with respect to the standing provision, which will essentially be eliminated. The Minnesota Legislature intended no such thing. Rather, the MN Add Point Statute provides the sole avenue for challenging the establishment of a new dealership.

Plaintiff did not assert a claim under the MN Add Point Statute, most likely because it is outside the statutory relevant market area. Plaintiff may argue that its challenge relates to the proposed change to its assigned territory. But the allegations in the Complaint expose Plaintiff's true purpose. Specifically, Plaintiff repeatedly seeks an injunction throughout the Complaint enjoining Ford from establishing the New Dealership, or any other dealership for that matter, within its locality. This demand constitutes a challenge to the establishment of a new Ford dealership, not just an objection to a locality change.

Conversely, if Plaintiff truly seeks to move forward with a challenge to the proposed

changes to its territory, that challenge cannot prevent the opening of the New Dealership. *See, e.g., Bob Dunn Jaguar, Inc. v. Ford Motor Co.,* (North Carolina Commissioner of Motor Vehicles rejected dealer's challenge to the establishment of a new dealership under statutory provision designed to address locality changes), copy attached as Exhibit 2. Any Ford dealer's territory, called its Locality under the Dealer Agreement, is merely the geographic area assigned to a dealer that Ford uses to assess the performance of that dealer. (Doc. 1-1, p. 28 at ¶ 2(a) (vehicle sales), p. 31 at ¶ 3(a) (parts sales)). The dealer, however, remains free to sell and service vehicles located anywhere. *Id.* If Plaintiff would like to dispute Ford's decision to re-assign territory currently assigned to it to the New Dealership, because that geography will be closer to that New Dealership, Plaintiff has that right under Section 80E.13(p), and its sole remedy, if successful, would be to retain its current territory, and the performance expectations for that geography.

The exclusive avenue for a challenge to the establishment of a new dealer, however, is the MN Add Point Statute, which Plaintiff did not, and cannot, invoke. Accordingly, Plaintiffs' claims pertaining to Plaintiff's effort to prevent the opening of the New Dealership should be dismissed as a matter of law.

    **C.**    **Plaintiff's Failure to Plead a Breach of Contract Claim Dooms its Breach of the Implied Duty of Good Faith and Fair Dealing Claim.**

Every non-sales contract in Minnesota includes an implied duty of good faith and fair dealing. *In re Hennepin County 1986 Recycling Bond Litigation*, 540 N.W.2d 494, 502 (Minn. 1995). This implied duty prevents a party to a contract from taking actions to hinder another party's performance under that contract. *Id*. A breach of the implied duty of good

8

faith and fair dealing, however, is not a stand-alone claim. *See Wild v. Rarig*, 234 N.W. 2d 775, 790 (Minn. 1975). Minnesota law does not recognize a breach of the implied duty of good faith and fair dealing claim separate from a corresponding breach of contract claim. *See Medtronic, Inc. v. Convacare, Inc.,* 17 F. 3d 252, 256 (8th Cir. 1994).

Dismissal of Plaintiff's breach of the implied duty of good faith and fair dealing claim is warranted since it treats it as a stand-alone claim. Plaintiff has not asserted a breach of contract action against Ford in the Complaint. Plaintiff refers to a "Dealer Agreement" in the Complaint and attaches of copy of this agreement to the Complaint. Plaintiff, however, does not argue that Ford breached any specific provision of the Dealer Agreement. Plaintiff does not assert that the Dealer Agreement prevents Ford from making any changes to its locality or that it prohibits Ford from establishing a new Ford dealership in its locality.[3] Instead, Plaintiff attempts to justify its good faith and fair dealing claim by alleging that Ford was either acting unreasonably or inconsistent with Plaintiff's expectations under the Dealer Agreement or that it effectively denied Plaintiff its expected benefits of the agreement. (Doc. 1-1, p. 20-21 at ¶¶ 69-73).

Plaintiff has not even hinted, let alone alleged, that Ford breached the terms of its Dealer Agreement. Absent any such claim, Plaintiff's breach of the implied duty of good faith and fair dealing claim cannot survive. *See Moser v. Katun Corp.*, 2007 WL 6362603 (Minn. Dist. Ct., June 15, 2007) (failure to plead a breach of contract claim resulted in

---

[3] And, in fact, it cannot, as the Dealer Agreement specifically allows Ford to make changes to Plaintiff's Locality (Doc. 1-1, p. at p. 27 at ¶ 1(j)) and to appoint new dealers as Ford sees fit. (Doc. 1-1, p. 38 at ¶ 9(c)).

dismissal of implied duty of good faith and fair dealing claim).

## IV. CONCLUSION

Because Plaintiff lacks any legal basis to object to the establishment of a new Ford dealer outside of Plaintiff's statutory relevant market area, Ford respectfully requests that this Court dismiss Plaintiff's Complaint for failure to state a claim pursuant to Civil Rule 12(b)(6).

Date: April 11, 2023                                  Respectfully submitted,


*/s/ Elizabeth A. McNellie*
Elizabeth A. McNellie (Admitted *pro hac vice*)
Jeremiah J. Wood (Admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, OH  43215-4138
Telephone:   (614) 228-1541
Facsimile:   (614) 462-2616
emcnellie@bakerlaw.com
jjwood@bakerlaw.com

Sheila T. Kerwin (#220309)
Chelsea E. Vilchis (#402156)
**NILAN JOHNSON LEWIS PA**
250 Marquette Avenue S., Suite 800
Minneapolis, MN 55401
Telephone: (612) 305-7500
Fax: (612) 305-7501
skerwin@nilanjohnson.com
cvilchis@nilanjohnson.com

*Attorneys for Defendant*
*Ford Motor Company*

## LR 7.1(F) (2)  CERTIFICATE OF COMPLIANCE

Ford Motor Company hereby certifies that this Memorandum of Law complies with both the word and line limits set forth in Local Rule 7.1(f)(1). This memorandum includes 2,743 words and 212 lines of text. These numbers were determined by using the word and line count functions included with Microsoft Word for Microsoft 365 MSO (Version 2208). Ford certifies that these word and line count tools were applied to include all text, including headings, footnotes, and quotations, excluding the text and lines found in the sections of the memorandum set forth in LR 7.1(f)(1)(C).

*/s/ Jeremiah J. Wood*
Jeremiah J. Wood

## **CERTIFICATE OF SERVICE**

This is to certify that on April 11, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Aaron G. Thomas
Jordan L. Weber
Yuka Shiotani
Taft Stettinius & Hollister LLP
2200 EDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
athomas@taftlaw.com
jweber@taftlaw.com
yshiotani@taftlaw.com

*Attorneys for Plaintiff*
*Anderson & Koch Ford, Inc.*

                                                */s/ Elizabeth A. McNellie*
                                                Elizabeth A. McNellie