# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Anderson & Koch Ford, Inc. | Case No. 0:23-cv-00762 (PJS/DTS) |
| Plaintiff, | |
| v. | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS** |
| Ford Motor Company, | |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND ............................................................................. 4

    A.    Anderson & Koch's Longstanding Partnership with Ford .......................... 4

    B.    Ford's Proposed Change to Anderson & Koch's Dealer's Locality ........... 6

    C.    Minnesota's Statutory Prohibition Against Unfair Practices by Manufacturers and Distributors .................................................................. 8

        1.    Minn. Stat. § 80E.13(k) ........................................................... 9

        2.    Minn. Stat. § 80E.13(p) ......................................................... 10

        3.    Minn. Stat. § 80E.17 ............................................................... 11

    D.    Anderson & Koch's Complaint Against Ford .......................................... 11

        1.    Ford's violations of Minn. Stat. § 80E.13(k) of the MVSDA ........ 12

        2.    Ford's violations of Minn. Stat. § 80E.13(p) of the MVSDA ........ 13

        3.    Declaratory judgment under Minn. Stat. § 555.01 et seq. .............. 15

        4.    Breach of the covenant of good faith and fair dealing ................... 15

ARGUMENT .................................................................................................. 16

I.    MOTION TO DISMISS STANDARD ................................................. 16

II.    ANDERSON & KOCH HAS SUFFICIENTLY ALLEGED THAT FORD'S PROPOSED CHANGE VIOLATES THE MVSDA ............................. 17

    A.    Minn. Stat. § 80E.13(k) and (p) are independent statutory bases to challenge the Proposed Change .................................................................. 17

    B.    Ford's proposed construction would impermissibly require the Court to read language into the MVSDA that does not exist on its face ............ 23

    C.    The "specific / general" canon of statutory interpretation is inapplicable ................................................................................................ 24

    D.    Even if the "specific / general" canon of statutory interpretation applied, it would compel the denial of Ford's motion .............................. 27

    E.    Ford's only substantive argument based on the language of the Dealer Agreement fails ............................................................................. 28

III.    FORD'S OUT-OF-STATE AUTHORITIES ARE FACTUALLY AND LEGALLY INAPPOSITE .............................................................................. 29

i

**TABLE OF CONTENTS**
(continued)

**Page**

IV.    ANDERSON & KOCH HAS PROPERLY PLED A CLAIM FOR
       BREACH OF THE COVENANT OF GOOD FAITH AND FAIR
       DEALING ........................................................................................................... 34

CONCLUSION ............................................................................................................. 36

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. Cty. of Hennepin*,
   639 N.W.2d 342 (Minn. 2002) ..................................................................... 19

*Am. Honda Motor Co., Inc. v. Bernardi's, Inc.*,
   735 N.E.2d 348 (Mass. 2000) ...................................................................... 32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 16

*Astleford Equip. Co. v. Navistar Int'l Transp. Corp.*,
   611 N.W.2d 33 (Minn. App. 2000), *aff'd in part, rev'd in part*, 632
   N.W.2d 182 (Minn. 2001) ............................................................................ 28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 16

*Burlington N., Santa Fe Ry. Co. v. Lohman*,
   193 F.3d 984 (8th Cir. 1999) ....................................................................... 24

*Cox v. Crown Coco, Inc.*,
   544 N.W.2d 490 (Minn. App. 1996) ............................................................ 19

*Cox v. Mortg. Elec. Registration Sys., Inc.*,
   685 F.3d 663 (8th Cir. 2012) ................................................................. 34, 35

*Crumpley-Patterson v. Trinity Lutheran Hosp.*,
   388 F.3d 588 (8th Cir. 2004) ....................................................................... 16

*Don Simmons, Inc., et al. v. Subaru of Am., et al.*,
   Sup. Ct., Chemung County, Mar. 15, 2018, O'Shea, J. ............................... 33

*GPI-AL, Inc. v. Nissan N. Am., Inc.*,
   No. CV 17-0511-WS-MU, 2019 WL 5269101 (S.D. Ala. Oct. 17, 2019) ........ 3, 26, 27

*Grady v. Progressive Direct Ins. Co.*,
   ___ F. Supp. 3d ___, 2022 WL 18494898 (D. Minn. 2022) ......................... 34

*In re Hennepin Cty. 1986 Recycling Bond Litig.*,
   540 N.W.2d 494 (Minn. 1995) ..................................................................... 35

*JJM Sunrise Automotive, LLC v. Volkswagen Group of America, Inc.*,
    46 Misc. 3d 755, 997 N.Y.S.2d 270 (N.Y. Sup. Ct. 2014) .................................... 32, 33

*Luxury Autos Of Huntington, Inc. v. Volkswagen Group of Am., Inc.*,
    No. 602591-14, 2015 WL 9998814 (N.Y. Sup. Ct. Sep. 24, 2015)............................ 33

*Minn. Voters Alliance v. Cty. of Ramsey*,
    962 N.W.2d 667 (Minn. App. 2021)........................................................................... 24

*Morton v. Becker*,
    793 F.2d 185 (8th Cir. 1986) ..................................................................................... 16

*Moser v. Katun Corp.*,
    No. 27CV06-15688, 2007 WL 6362603 (Minn. Dist. Ct. June 15, 2007) .................. 35

*New Motor Vehicle Bd. v. Orrin. W. Fox. Co.*,
    439 U.S. 96 (1978)................................................................................................... 8, 19

*North Star Int'l Trucks, Inc. v. Navistar, Inc.*,
    No. A12-0732, 2013 WL 1392939 (Minn. App. Apr. 8, 2013).................. 9, 20, 21, 29

*Parktown Imp., Inc. v. Audi of Am., Inc.*,
    278 S.W.3d 670 (Mo. 2009) ......................................................................... 30, 31, 32

*Second Richfield Motors, LLC v. Kia Motors Am., Inc.*,
    No. 19-CV-1755, 2020 WL 13538829 (D. Minn. May 20, 2020)................................ 8

*Shakopee Chevrolet Inc. v. General Motors LLC*,
    No. CV 20-2366, 2021 WL 1785229 (D. Minn. May 5, 2021) ...................... 21, 22, 23

*State by Humphrey v. Baillon Co.*,
    503 N.W.2d 799 (Minn. App. 1993).......................................................................... 19

*Strand v. Diversified Collection Service, Inc.*,
    380 F.3d 316 (8th Cir. 2004) ..................................................................................... 16

**Statutes**

Alabama Motor Vehicle Franchise Act ............................................................................ 26

Minn. Stat. § 80E.01 .................................................................................................... 8, 19

Minn. Stat. § 80E.02 ......................................................................................................... 8

Minn. Stat. § 80E.03 ......................................................................................................... 4

Minn. Stat. § 80E.13 ................................................................................... *passim*

Minn. Stat. § 80E.14 ................................................................................... *passim*

Minn. Stat. § 80E.17 ........................................................................... 11, 19, 24

Minn. Stat. § 555.01 ................................................................................ 12, 15

Minn. Stat. § 645.26 ..................................................................................... 25

**Rules**

Federal Rule of Civil Procedure 8(a)(2) .......................................................... 17

Federal Rules of Civil Procedure Rule 12(b)(6) ........................................... 16, 18

## INTRODUCTION

Plaintiff Anderson & Koch, Inc. ("Anderson and Koch"), a three-generation Ford dealership, serves North Branch, Minnesota within a locality designated by Ford Motor Company ("Ford") as Anderson & Koch's area of sales and service responsibility. In reliance on this Ford-assigned "Dealer's Locality," Anderson & Koch has made significant investments necessary to meet or exceed all of its sales and service obligations to Ford. These significant investments of time, money and resources have touched every facet of this local, family-owned business.

Notwithstanding these substantial investments, Ford intends to unilaterally remove half of all census tracts within Anderson & Koch's Dealer's Locality and transfer those same census tracts to a new dealership to be constructed within Anderson & Koch's Dealer's Locality. If allowed to proceed with its plan, Ford's proposed change will cause Anderson & Koch to suffer severe market compression and lose its relative proximity advantage (and, in turn, sales and profits) with respect to 42%–57% of the registrations within its current census tracts.

Ford's proposed change violates the express terms of the Minnesota Motor Vehicle Sale and Distribution Act ("MVSDA"), legislation that was specifically enacted to address the uneven bargaining power between automotive manufacturers and their dealers. Specifically, Ford's proposed change would violate: (i) Minn. Stat. § 80E.13(k) by modifying Anderson & Koch's franchise vis-à-vis another franchise and substantially impairing its sales, service obligations and investments; and (ii) Minn. Stat. § 80E.13(p)

1

by changing Anderson & Koch's Dealer Locality without due regard to the current pattern of motor vehicle sales in Minnesota.

Relying on factually and legally inapposite case law interpreting different statutes from other jurisdictions, Ford seeks dismissal on the grounds that the "exclusive procedure" for challenging the establishment of a new franchise or dealership is Minn. Stat. § 80E.14. As detailed below, Ford's argument lacks any support in the text of the statute or the cases that have interpreted it and fails for several independent reasons.

First, Ford's motion is premised upon a straw-man argument by attempting to re-frame the nature of the proposed change as one limited only to the establishment of a new dealership. Anderson & Koch is expressly challenging the ***removal*** of half of its census tracts and the ***re-assignment*** of those tracts to a new dealership ***within Anderson & Koch's existing Dealer's Locality*** under Minn. Stat. § 80E.13(k) and (p). Both the plain language of these MVSDA provisions, and Minnesota case law interpreting the same, confirm that they are independent remedies—regardless of the existence of Minn. Stat. § 80E.14.

Second, to adopt Ford's interpretation, this Court would effectively need to read language into the MVSDA that does not exist on the statute's face. Such an interpretation is prohibited under basic canons of statutory construction.

Third, Ford's attempt to circumvent the application of Minn. Stat. § 80E.13(k) and (p) by arguing that Minn. Stat. § 80E.14 is a "more specific" provision overlooks the well-settled rule that the "specific / general" canon of statutory construction applies only where the general statute and the specific statute are in irreconcilable conflict. No such conflict exists in the MVSDA, and a recent analogous federal decision from the Southern District

2

of Alabama, *GPI-AL, Inc. v. Nissan N. Am., Inc.*, has squarely rejected Ford's contrary argument.

Fourth, even if the "specific / general" canon of construction did apply (which it does not), Minn. Stat. § 80E.13(k) and (p) are ***more*** specific than Minn. Stat. § 80E.14 because they address the specific conduct underlying the proposed change—namely the modification of a franchise in favor of a new franchise and the assignment and change of a dealer's area of sales effectiveness.

Ford's remaining two arguments are equally without merit. Ford's contention, relegated to a footnote, that the proposed change to the Dealer's Locality is permitted under its dealer agreement with Anderson & Koch cannot, as a matter of law, abrogate Anderson & Koch's statutorily-provided remedies under the MVSDA. Likewise, Ford's argument that Anderson & Koch must plead an independent claim for breach of contract in order to assert a claim for breach of the covenant of good faith and fair dealing misconstrues Minnesota law. While an enforceable contract must exist before the duty of good faith and fair dealing can be implied by law, that does not mean that plaintiffs must first establish an express breach of contract claim. Quite the opposite, under Minnesota law, a claim for breach of an implied covenant of good faith and fair dealing necessarily assumes, as is the case here, that the parties did not expressly articulate the covenant allegedly breached.

For all of these reasons, Ford's motion should be denied in its entirety.

## FACTUAL BACKGROUND

### A.    Anderson & Koch's Longstanding Partnership with Ford

Anderson & Koch is a new motor vehicle dealer as defined by Minn. Stat. § 80E.03(3) and operates a Ford franchised motor vehicle dealership, where it sells and services Ford products pursuant to a franchise, as defined by Minn. Stat. § 80E.03(8). Compl. (ECF No. 1-1) ¶ 6. Ford is a manufacturer and distributor, as defined by Minn. Stat. §§ 80E.03(4)-(5), because it manufactures Ford vehicles and sells, and offers to sell, those vehicles to new motor vehicle dealers, including Anderson & Koch, in Minnesota. *Id*. ¶ 8.

Pursuant to a Ford Sales and Service Agreement ("Dealer Agreement"), Anderson & Koch is authorized to sell and service Ford vehicles. *Id*., Ex. A (Dealer Agreement). Ford refers to a motor vehicle dealer's assigned geographic area by which it measures the dealer's sales effectiveness as its "Dealer's Locality." *Id*., Ex. A § 1(j). The Dealer's Locality constitutes the geographical region in which Anderson & Koch is responsible for effectively selling, servicing, and otherwise representing Ford's products. *Id*. ¶ 14.

Notably, the term "Dealer's Locality" in the Dealer Agreement is synonymous with the phrase "Area of Sales Effectiveness" as defined in the relevant statutory scheme. *See* Minn. Stat. § 80E.03 subd. 10b ("'Area of sales effectiveness' means a geographic area designated in a franchise agreement or related document where a new motor vehicle dealer is responsible for effectively selling, servicing, and otherwise representing the products of the manufacturer, distributor, or factory branch.").

Anderson & Koch has faithfully and effectively sold, serviced and represented Ford in its Dealer's Locality, consisting of North Branch, Minnesota and the surrounding area, for over 59 years. Compl. ¶ 15. For three generations, Anderson & Koch has been family owned and operated. *Id*. ¶ 16. As a family-owned business, Anderson & Koch has succeeded as a new motor vehicle dealer through hard work, service to community, a dedication to providing a premium experience to its customers and its longstanding partnership with Ford. *Id*.

Through its decades-long partnership with Ford, Anderson & Koch has made, and continues to make, the significant investments necessary to meet or exceed its sales and service obligations throughout its Dealer's Locality. *Id*. ¶ 17. Among other things, Anderson & Koch has incurred significant time, resources and millions of dollars in out-of-pocket costs and expenses to upgrade, enhance and grow its dealership over the past 10 years in reliance upon, and in order to effectively service, its Dealer's Locality. *Id*. ¶ 18 (identifying specific investments undertaken by Anderson & Koch to effectively service its Dealer's Locality). In October 2022, Anderson & Koch made further investments to become a Ford Model E Certified Elite electric vehicle dealer. *Id*. ¶ 19. Ford estimates that Anderson & Koch's out-of-pocket costs and expenses for this initiative alone will meet or exceed $1.2 million. *Id*.

Because of these substantial investments, made in partnership with Ford and in reliance on its Dealer's Locality, Anderson & Koch has been, and remains, a successful and profitable Ford dealership. *Id*. ¶ 20.

**B.      Ford's Proposed Change to Anderson & Koch's Dealer's Locality**

Notwithstanding its longstanding partnership with Anderson & Koch, Ford provided written notice of its intent to substantially change Anderson & Koch's Dealer's Locality by letter dated November 30, 2022 (the "Notice of Proposed Change" or "Proposed Change"). Compl., Ex. B (Notice of Proposed Change). Pursuant to Ford's Notice of Proposed Change, Ford intends to unilaterally remove half of the census tracts within Anderson & Koch's current Dealer's Locality for the purpose of assigning those same census tracts to a new franchise that Ford plans to approve or establish at 508 SW 15th Street, Forest Lake MN, 55025 (the "Proposed New Dealership")—a location within the boundaries of Anderson & Koch's current Dealer's Locality. *Id*., Ex. C (December 7, 2022 memorandum identifying the location of the Proposed New Dealership).

As reflected in a Ford Dealer's Locality Report dated November 4, 2022 ("Current Locality Report"), Anderson & Koch's current Dealer's Locality contains 18 census tracks comprising the following geographical boundaries:



6

*Id.*, Ex. D (the Current Locality Report, which enumerates the census tracts comprising Anderson & Koch's current Dealer's Locality).

According to Ford's Notice of Proposed Change, the total census tracts in Anderson & Koch's current Dealer's Locality will be reduced by 50% (from 18 to nine tracts) comprising the following revised geographical boundaries:



*See id.*, Ex. B (identifying the proposed post-change census tracts). According to Ford, this significant reduction in Anderson & Koch's Dealer's Locality "will be implemented 90 days after receiving this [Notice of Proposed Change]." *Id.*

By letter dated February 1, 2023, Anderson & Koch objected to Ford's Notice of Proposed Change and advised that Ford's proposal to reallocate half of its census tracts to establish or approve the Proposed New Dealership within Anderson & Koch's current Dealer's Locality violates Minnesota law. *Id.*, Ex. E (Anderson & Koch's February 1, 2023 letter to Ford). Anderson & Koch further requested that Ford rescind its Notice of Proposed

Change. *Id*. By letter dated February 10, 2023, Ford declined to rescind its Notice of Proposed Change and advised of its "inten[t] to move forward with the Locality change." *Id*., Ex. F (Ford's February 10, 2023 letter to Anderson & Koch).

### C. Minnesota's Statutory Prohibition Against Unfair Practices by Manufacturers and Distributors

Minnesota's Motor Vehicle Sale and Distribution Act ("MVSDA") is codified in Chapter 80E of the Minnesota Statutes. The MVSDA was enacted in 1981, and amended over time, to provide a comprehensive approach to regulating the sale and distribution of motor vehicles in the state, to prevent fraud and other abuses by automotive manufacturers and to protect the property and investments of Minnesotans. Minn. Stat. § 80E.01. By its terms, the MVSDA applies "to all new motor vehicle dealers and contracts existing between new motor vehicle dealers and manufacturers on May 1, 1981 and to all subsequent contracts between new motor vehicle dealers and manufacturers." Minn. Stat. § 80E.02; *see also Second Richfield Motors, LLC v. Kia Motors Am., Inc*., No. 19-CV-1755 (JNE/TNL), 2020 WL 13538829, at *4 (D. Minn. May 20, 2020).

The MVSDA was specifically enacted to address the uneven bargaining power between automotive manufacturers and their dealers. *See New Motor Vehicle Bd. v. Orrin. W. Fox. Co*., 439 U.S. 96, 100 (1978). According to the U.S. Supreme Court, statutes such as the MVSDA are specifically designed to "protect retail car dealers from perceived abusive and oppressive acts by manufacturers." *Id*.

For purposes of the instant litigation, Anderson & Koch seeks relief under three provisions of the MVSDA, each of which is addressed, in turn, below.

1.      *Minn. Stat. § 80E.13(k)*

Section 80E.13(k) of the MVSDA makes it unlawful and an unfair practice for any

manufacturer to engage in the following practice:

> (k) threaten to modify or replace or modify or replace a franchise with a
> succeeding franchise that would adversely alter the rights or obligations of a
> new motor vehicle dealer under an existing franchise or that substantially
> impairs the sales or service obligations or investments of the motor vehicle
> dealer.

*See* Minn. Stat. § 80E.13(k).

Applying the plain and unambiguous language of this statutory protection,

Minnesota courts have rejected manufacturers' reliance on their dealer agreements with

new motor vehicle dealers to avoid their statutory obligations to refrain from substantially

impairing the investments or sales or service obligations of their Minnesota dealers. *See*

*infra* Section II.E. Consistent with Minn. Stat. § 80E.13(k), Minnesota courts expressly

prohibit manufacturers from taking actions relative to a Dealer's Locality that will have a

detrimental effect on the profitability and value of the dealer. *See, e.g.,* Affidavit of Aaron

Thomas ("Thomas Aff."), Ex. A (*North Star Int'l Trucks, Inc. v. Navistar, Inc*., Court File

No. 27-cv-10-511 (Henn. Cty., 4th Judicial Dist.) (Hon. Susan Burke) (July 22, 2011

Findings of Fact, Conclusions of Law, and Order for Judgment) (rejecting a manufacturer's

reliance on its dealership agreement and finding, at trial, that removing several ZIP codes

from the dealer's area of sales effectiveness substantially impaired the sales or service

obligations of the dealer in violation of the MVSDA)).

2. *Minn. Stat. § 80E.13(p)*

Section 80E.13(p) of the MVSDA further provides that it is unlawful and an unfair

practice for any manufacturer to engage in the following practice:

> (p) assign or change a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market. The manufacturer, distributor, or factory branch must provide at least 90 days' notice of the proposed change. The change may not take effect if the dealer commences a civil action within the 90 days' notice period to determine whether the manufacturer, distributor, or factor branch met its obligations under this section. The burden of proof in such an action shall be on the manufacturer or distributor. In determining at an evidentiary hearing whether a manufacturer, distributor, or factory branch has assigned or changed the dealer's area of sales effectiveness or is proposing to assign or change the dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicles sales and registrations within the dealer's market, the court may take into consideration the relevant circumstances, including but not limited to:
>
> > (1)     the traffic patterns between consumers and the same line-make franchised dealers of the affected manufacturer, distributor, or factory branch who are located within the market;
> >
> > (2)     the pattern of new vehicle sales and registrations of the affected manufacturer, distributor, or factory branch within various portions of the area of sales effectiveness and within the market as a whole;
> >
> > (3)     the growth or decline in population, density of population, and new car registrations in the market;
> >
> > (4)     the presence or absence of natural geographical obstacles or boundaries, such as rivers;
> >
> > (5)     the proximity of census tracts or other geographic units used by the affected manufacturer, factory branch, distributor, or distributor branch in determining the same line-make dealers' respective areas of sales effectiveness; and
> >
> > (6)     the reasonableness of the change or proposed change to the dealer's area of sales effectiveness, considering the benefits and harm to the petitioning dealer, other same line-make dealers, and the manufacturer, distributor, or factory branch.

*See* Minn. Stat. § 80E.13(p).

> 3.      *Minn. Stat. § 80E.17*

Independent of the plain language of Minn. Stat. §§ 80E.13(k) and (p), which expressly allows for a civil action, Minn. Stat. § 80E.17 provides a right of action for any dealer that is harmed, or would be harmed, by a manufacturer's violation of the MVSDA, including Section 80E.13(k) and (p). It states:

> Notwithstanding the terms of any franchise agreement or waiver to the contrary, any person whose business or property is injured by a violation of sections 80E.01 to 80E.17, or any person injured because of the refusal to accede to a proposal for an arrangement which, if consummated, would be in violation of section 80E.01 to 80E.17, may bring a civil action to enjoin further violations and to recover the actual damages sustained, together with costs and disbursements, including reasonable attorney's fees.

*Id*. at 80E.17.

> D.      **Anderson & Koch's Complaint Against Ford**

On February 28, 2023, Anderson & Koch commenced an action against Ford in the Chisago County District Court.[1] *See generally* Compl. (ECF No. 1-1). Anderson & Koch's complaint alleges that the MVSDA prohibits precisely what Ford purports to do in its Notice of Proposed Change—use otherwise unchecked economic leverage afforded to it under its Dealer Agreement to: (i) substantially impair the sales or service obligations and investments of Anderson & Koch; and (ii) arbitrarily, or without due regard for the present pattern of motor vehicles sales and registrations, modify its area of sales effectiveness. *Id*. ¶ 37. Anderson & Koch asserted four causes of action against Ford: (1) violation of Minn.

---

[1] On March 29, 2023, Ford removed this action to the United States District Court for the District of Minnesota. *See* ECF No. 1.

Stat. § 80E.13(k); (2) violation of Minn. Stat. § 80E.13(p); (3) declaratory judgment under Minn. Stat. § 555.01 *et seq.*, and (4) breach of the covenant of good faith and fair dealing.[2]

### 1. Ford's violations of Minn. Stat. § 80E.13(k) of the MVSDA

Anderson & Koch's Complaint alleges that Ford's Proposed Change will substantially impair Anderson & Koch's sales and service obligations, along with its significant investments, by substantially affecting the dealership's profitability and value in violation of Minn. Stat. § 80E.13(k). *Id*. ¶ 38.

Among other things, based on Ford's own methodology for analyzing the impact of the Proposed Change, Anderson & Koch will experience alarming market compression and lose its relative proximity advantage with respect to 42%-57% of the registrations (***approximately half***) within its current census tracts. *Id*. ¶ 39. According to Ford's own sales expectancy formula, an average dealership would be expected to lose sales in proportion to the loss of territory in its Dealer's Locality. *Id*. ¶ 40. Analyzing the Proposed Change in Ford's own terms, the anticipated losses will require Anderson & Koch to ***double*** its post-change sales performance (sales relative to sales expectations) to maintain its current sales level. *Id*.

Anderson & Koch's bottom-line losses will be significantly larger than its top-line sales loss. *Id*. For Anderson & Koch, Ford, or virtually any profit-seeking entity, "fixed" and other overhead expenses cannot simply be reduced in proportion to a top-line sales

---

[2] Anderson & Koch did not assert a claim under Minn. Stat. § 80E.14, which provides limitations on manufacturers from establishing or relocating a new motor vehicle dealership or relocating an existing new motor dealership within a radius of ten miles around an existing dealership.

loss—here, because Ford has decided to unilaterally strip and reassign Anderson & Koch's census tracts to another dealership in violation of Minnesota law. *Id.* ¶ 41. Indeed, in the wake of the Proposed Change, Anderson & Koch anticipates that its net profits will decline by ***approximately twice the magnitude of any sales loss***, thereby creating an immediate existential threat to the viability of its business. *Id.* ¶ 42.

Accordingly, Anderson & Koch's Complaint alleges that Ford's proposal to reallocate half of the census tracts within Anderson & Koch's Dealer's Locality to a Proposed New Dealership within its current Dealer's Locality violates the express terms of Minn. Stat. § 80E.13(k) and is therefore unlawful. *Id.* ¶ 43.

### 2. *Ford's violations of Minn. Stat. § 80E.13(p) of the MVSDA*

Independent of the statutory violation described above, Anderson & Koch's Complaint also alleges that the Proposed Change violates Minn. Stat. § 80E.13(p) because it is made without due regard to the current pattern of motor vehicle sales in Minnesota. *Id.* ¶ 44. As set forth above, Section 80E.13(p) expressly prohibits a manufacturer from "assign[ing] or chang[ing] the dealer's area of sales effectiveness or proposing to assign or change the dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market." But that is, again, precisely what Ford purports to do in its Notice of Proposed Change. *Id.* ¶ 45.

Based on a demographic regression study performed in connection with Anderson & Koch's receipt of the Notice of Proposed Change, Anderson & Koch's market share consistently aligns with the Minnesota state average for new motor vehicle dealers. *Id.* ¶

13

46. In the absence of any meaningful variation in Anderson & Koch's market share as compared to the state average for other new motor vehicle dealers, the Proposed Change is, on its face, objectively arbitrary and made without due regard to the present pattern of motor vehicle sales and registrations within Anderson & Koch's market in violation of Minnesota law. *Id*. ¶ 47.

Ford's Proposed Change further fails to consider: traffic patterns between customers and the same line-make franchised dealers located within the market; the pattern of new vehicle sales and registrations of Ford within the market as a whole; the growth or decline in population, density of population, and new car registrations within the market; the presence or absence of natural geographical obstacles or boundaries; the proximity of census tracts or other geographic units used to determine the same line-make dealers' respective areas of sales effectiveness; and, importantly, the reasonableness of the proposed change to Anderson & Koch's area of sales effectiveness, considering the benefits and harm to Anderson & Koch. *Id*. ¶ 48. Indeed, neither Ford's Notice of Proposed Change nor its subsequent correspondence has addressed any of the relevant statutory requirements and factors under the MVSDA. *Id*. ¶ 49.

Accordingly, Anderson & Koch's Complaint alleges that Ford's proposal to remove and reallocate half of the census tracts within Anderson & Koch's Dealer's Locality to approve the Proposed New Dealership within Anderson & Koch's current Dealer's Locality separately violates the express terms of Minn. Stat. § 80E.13(p) and is therefore unlawful. *Id*. ¶ 50.

3.    *Declaratory judgment under Minn. Stat. § 555.01 et seq.*

Anderson & Koch's Complaint also alleges a claim for declaratory judgment under Minn. Stat. § 555.01 *et seq.* as it relates to Anderson & Koch and Ford's rights and obligations under the MVSDA and the Dealer Agreement. *Id.* ¶¶ 63-67. Specifically Anderson & Koch has requested a judgment declaring that:

(i)    Ford is enjoined from proceeding with any of the proposed actions described in the Notice of Proposed Change or otherwise reducing Anderson & Koch's Dealer's Locality;

(ii)    Ford is enjoined from approving or establishing the Proposed New Dealership or any other competing franchise within Anderson & Koch's Dealer's Locality; and

(iii)    Ford is enjoined from providing any new or other franchise with any portion of Anderson & Koch's Dealer's Locality or otherwise reallocating any of the census tracts within Anderson & Koch's Dealer's Locality.

*Id.* ¶ 67.

4.    *Breach of the covenant of good faith and fair dealing*

Finally, Anderson & Koch's Complaint alleges a claim for breach of the covenant of good faith and fair dealing, which requires that each party to a contract act with honesty in fact and with the observation of commercially reasonable standards of fair dealing in the trade. *Id.* ¶¶ 68-73. Anderson & Koch contends that the actions of Ford, as detailed above, constitute a violation of the covenant of good faith and fair dealing implied by Minnesota law in the Dealer Agreement. *Id.* ¶ 73.

# ARGUMENT

## I.     MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter [] to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679; *see also Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) ("A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party."). A plaintiff must only "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

As the Eighth Circuit has emphasized, a Rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). In other words, "[a] motion to dismiss should be granted 'as a practical matter . . . only in the unusual case in which there is some insuperable bar to relief.'" *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (quoting *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974)).

As set forth below, the allegations in Anderson & Koch's Complaint easily satisfy the pleading standards of Federal Rule of Civil Procedure 8(a)(2) and plausibly give rise to an entitlement to relief.

## II.    ANDERSON & KOCH HAS SUFFICIENTLY ALLEGED THAT FORD'S PROPOSED CHANGE VIOLATES THE MVSDA

Ford does not argue that Anderson & Koch has failed to allege sufficient non-conclusory *facts* to state a viable claim under Minn. Stat. § 80E.13(k) and (p). Instead, Ford argues that, in any challenge under the MVSDA that involves the establishment of a new franchise or dealership, a dealer can only bring a claim under Minn. Stat. § 80E.14 as the "exclusive procedure" for challenging such action. Not only is this interpretation illogical, but it lacks any support in the text of the statute or the cases that have interpreted it.

### A.    <u>Minn. Stat. § 80E.13(k) and (p) are independent statutory bases to challenge the Proposed Change</u>

In support of its motion to dismiss, Ford erects a straw-man argument by claiming that Anderson & Koch "challenges Ford's plan to [] establish [a] new Ford dealership." Ford Br. at 1. According to Ford, Minn. Stat. § 80E.14 "establishes an exclusive procedure for dealers to challenge a manufacturer's decision to add a new dealership of the same line-make within a statutorily defined 'relevant market area,'" and Anderson & Koch does not have standing under that provision. *Id*. at 1-2. But Ford's attempt to re-frame the nature of the Proposed Change as limited only to the establishment of a new dealership improperly narrows the basis of Anderson & Koch's claims. Anderson & Koch is expressly challenging the ***removal*** of half of its census tracts and the ***re-assignment*** of those tracts to a new dealership ***within Anderson & Koch's existing Dealer's Locality*** under Minn. Stat.

17

§ 80E.13(k) and (p).[3] Minn. Stat. § 80E.14 is not the exclusive procedure for raising such a challenge.

The Minnesota legislature, in enacting the MVSDA, prohibited multiple actions by automotive manufacturers as being unlawful and unfair practices. The MVSDA prohibits dealers from "modify[ing] … a franchise with a succeeding franchise that would adversely alter the rights or obligations of a new motor vehicle dealer under an existing franchise or that substantially impairs the sales or service obligations or investments of the motor vehicle dealer." Minn. Stat. § 80E.13(k). It also prohibits dealers from "assign[ing] or chang[ing] a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market." Minn. Stat. § 80E.13(p). And, independently, it provides limitations on dealers from establishing or relocating "an additional new motor vehicle dealership or relocating an existing new motor vehicle dealership within or into a relevant market area where the line make is then represented." Minn. Stat. § 80E.14. The MVSDA expressly provides a right of action for

---

[3] For this same reason, Ford's request that the Court dismiss Anderson & Koch's Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) is improper. *See* Ford Br. at 10 (arguing that Anderson & Koch "lacks any legal basis to object to the establishment of a new Ford dealer outside of Plaintiff's statutory relevant market area"). Even if the Court accepts Ford's argument that Minn. Stat. § 80E.14 is the exclusive means through which Anderson & Koch may challenge the establishment of a new dealership, the appropriate remedy is not dismissal of the Complaint because Anderson & Koch has properly alleged that the removal of its census tracts and the modification of its franchise constitutes violations of Minn. Stat. § 80E.13(k) and (p)—which claims are separate and distinct from Ford's decision to establish a new dealership. As noted, Ford does not challenge the sufficiency of those claims or allegations.

any dealer that is harmed, or would be harmed, by a manufacturer's violation of any provision of the MVSDA, including Section 80E.13(k) and (p). *See* Minn. Stat. § 80E.17.

The fact that the legislature prohibited manufacturers from taking various actions through independent statutory provisions reflects the reality that a manufacturer might seek to unlawfully or unfairly use its unchecked economic leverage to the detriment of a local dealer through a variety of means. The establishment of a new dealership within a tight geographic proximity is merely one type of action that the legislature deemed unlawful and unfair.[4] But there is ***nothing*** in the text of the MVSDA that provides, or even suggests, that the existence of statutory redress under one provision, such as Minn. Stat. § 80E.14, renders that provision the exclusive remedy for a dealer or somehow prohibits the dealer from pursuing remedies for other violations under the MVSDA. *See, e.g., Abraham v. Cty. of Hennepin*, 639 N.W.2d 342, 346-47 (Minn. 2002) ("Ordinarily, unless a statute provides that its remedy is exclusive, a party should not be prevented from bringing concurrent claims."); *Cox v. Crown Coco, Inc.*, 544 N.W.2d 490, 496-97 (Minn. App. 1996) (allowing a claim for retaliatory discharge under both the Whistleblower Act and Minnesota Occupational Safety and Health Act); *State by Humphrey v. Baillon Co.*, 503 N.W.2d 799, 802 (Minn. App. 1993) (rejecting argument that Minn. Stat. Ch. 117 is the exclusive

---

[4] It bears reminding that the purpose of the MVSDA is to protect *dealers* and their investments. A contrary reading would allow manufacturers to circumvent protections by, for example, placing a new dealership just beyond the 10-mile radius regardless of the impact on the existing dealership and regardless of whether the action violated another provision of the MVSDA. *See* Minn. Stat. § 80E.01; *New Motor Vehicle Bd.*, 439 U.S. at 100.

method of recovering attorneys' fees in eminent domain proceedings because they do not so provide).

The conclusion that Minn. Stat. § 80E.13(k) and (p) provide independent remedies—regardless of the existence of Minn. Stat. § 80E.14—is supported by prior decisions that have construed the MVSDA. In *North Star Int'l Trucks, Inc. v. Navistar, Inc.*, No. A12-0732, 2013 WL 1392939 (Minn. App. Apr. 8, 2013), for example, plaintiffs were franchised dealers of the International line-make of trucks manufactured by defendant Navistar, Inc. *Id*. at *1. Plaintiffs' area of responsibility (or dealer's locality) comprised most of the Twins Cities area. *Id*. On January 7, 2009, Navistar sent a letter to plaintiffs announcing its intent to remove 51 zip codes from their locality and subsequently informed plaintiffs that those areas had been reassigned to a new dealer, defendant Boyer Ford Trucks, Inc. *Id*. at *2. The dealers sued Navistar for, among other claims, (1) a violation of Section 80E.13(k) for stripping the zip codes from plaintiffs' locality and re-assigning that territory to the new dealer, *id*. at *3, and (2) a violation of Section 80E.14 for establishing new dealerships within a mile of one of plaintiffs' locations, *id*. at *2.[5]

Despite the fact that the proposed change included the establishment of a new dealership, which implicates Section 80E.14, the court denied Navistar's motion to dismiss the Section 80E.13(k) claim. Thomas Aff., Ex. B at 9 (*North Star Int'l Trucks, Inc. v. Navistar, Inc*., Court File No. 27-cv-10-511 (Henn. Cty., 4th Judicial Dist.) (Hon. Susan Burke) (June 30, 2010 Motion to Dismiss Order) ("Based on North Star's allegations that

---

[5] Plaintiffs argued that the new dealer was selling the same line-make in four different locations—three of which were within the 10-mile radius.

Navistar has stripped fifty-one zip codes from North Star's area of responsibility and assigned them to Boyer Ford, the Court concludes that North Star has stated a claim for a violation of Section 80E.13(k).")). Both the Section 80E.13(k) and Section 80E.14 claims survived summary judgment and were tried to a jury.[6] *See id*., Ex. C at 10-11 (Sept. 29, 2010 Summary Judgment Order) (finding that there was a genuine issue of material fact as to whether Navistar improperly modified plaintiffs' dealership agreement in violation of Section 80E.13(k) by stripping zip codes from plaintiffs' area of responsibility and re-assigning them to new dealer); *see id*. at 26-29 (finding that a reasonable jury could find that Navistar established International dealerships within plaintiffs' locality under Section 80E.14).

*Navistar, Inc.* confirms that the MVSDA contains independent prohibitions, the violations of which can be independently alleged regardless of the applicability of another provision. The dealer in that action successfully challenged the removal of its territory and re-assignment to a new dealer under Section 80E.13(k) notwithstanding the existence of Section 80E.14—demonstrating that the latter provision does not constitute the "exclusive procedure" for challenging an action that involves the establishment of a new dealership.

*Shakopee Chevrolet Inc. v. General Motors LLC*, No. CV 20-2366 (JRT/LIB), 2021 WL 1785229 (D. Minn. May 5, 2021) is also instructive. There, Defendant General Motors

---

[6] The jury found that "Navistar modified North Star's franchise by removing the 51 zip codes, and that the removal 'substantially impair[ed] the sales or service obligations or investments of North Star'" in violation of section 80E.13(k). 2013 WL 1392939, *4. The jury ultimately determined that North Star's claim was barred by waiver based on inaction that is not present in this case. *Id*.

LLC ("GM") informed a motor vehicle dealer that it intended to expand the dealer's area of sales effectiveness from 7 to 13 census tracts. *Id*. at *2. The dealer sued GM alleging three violations of the MVDSA, including Sections 80E.13(p) and (k). *Id*. As it relates to Section 80E.13(k), the dealer argued that the "modification would have materially impacted its operations and performance expectations such that it modified, or threatened to modify the agreement that fixed the existing legal rights and liabilities of the parties." *Id*. at *3. Much like Ford argues here, GM argued that the Section 80E.13(k) claim should be dismissed because "§ 80E.13(p) exclusively governs changes to areas of sales effectiveness." *Id.* at *4. GM further argued that "applying § 80E.13(k) as [dealer] does would render [§ 80E.13(p)] nugatory and surplusage because if areas of sales effectiveness could be challenged under (k), then (p), as amended, would not need to exist." *Id*.

Judge Tunheim rejected GM's argument, explaining that "Minnesota courts have applied § 80E.13(k), rather than § 80E.13(p), to modifications of sales territory when the modifications were significant enough to substantially impair the sales or service obligations or investments of a dealership." *Id*. (citing *Navistar, Inc*., 2013 WL 1392939, at *4). The court held "that the existence of § 80E.13(p) does not bar claims under § 80E.13(k) when the [sales territory] modification is substantial enough to threaten the franchise's existing rights and liabilities." *Id*. The court denied GM's motion to dismiss the Section 80E.13(k) claim because the increase in the dealer's locality by approximately 66% "present[ed] a plausible allegation that the proposed [change] modified, or threatened to

modify, [dealer's] operations such that it altered the rights, obligations, and liabilities of the franchise itself."[7] *Id.* at *4.

In *Shakopee Chevrolet Inc.*, Judge Tunheim allowed the dealer to pursue claims under both Sections 80E.13(p) and (k), despite the fact that the proposed change was a modification to the dealer's locality, which conduct is specifically addressed in Section 80E.13(p), because the change also independently constituted a violation of Section 80E.13(k). In doing so, Judge Tunheim recognized that each of the provisions within the MVSDA are independent prohibitions against unlawful or unfair conduct by manufacturers and that the application of one provision is not exclusive over the application of another relevant provision. The same conclusion is compelled here.

### B.   Ford's proposed construction would impermissibly require the Court to read language into the MVSDA that does not exist on its face

As previously noted, there is nothing in the text of the MVSDA that provides, or even suggests, that Minn. Stat. § 80E.14 is the exclusive procedure for challenging an action by a manufacturer that involves the establishment of a new dealership, such as the Proposed Change. To adopt Ford's interpretation, the Court would effectively need to read language into the MVSDA that does not exist on the statute's face.

---

[7] The court also denied GM's motion to dismiss the Section 80E.13(p) claim: "Because Shakopee Chevrolet has sufficiently alleged that GM made this 2020 [sales territory] modification 'arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market[,]' *id.* § 80E.13(p) (2018), and attempted to impose this change despite the dealer's commencement of a civil action within 90 days of receiving the 2020 APR Notice, the Court finds that Shakopee Chevrolet has met its burden of stating a plausible claim as to Count III." 2021 WL 1785229, at *5.

Such an interpretation is prohibited under basic canons of statutory construction. "The rules of statutory construction dictate that words should not be supplied to a statute when the words are purposefully omitted or when adding words would defeat the purpose of the statute." *Burlington N., Santa Fe Ry. Co. v. Lohman*, 193 F.3d 984, 985 (8th Cir. 1999). Courts "will not add 'words or meaning to a statute that are purposely omitted or inadvertently overlooked.'" *Minn. Voters Alliance v. Cty. of Ramsey*, 962 N.W.2d 667, 675 (Minn. App. 2021) (quoting *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 760 (Minn. 2010)).

Contrary to these statutory construction canons, Ford would have this Court read into Minn. Stat. § 80E.14 that it is the "exclusive remedy for any challenge involving the establishment of a new franchise or dealership." That language plainly does not exist in the text of the statute. Likewise, Ford would have the Court read into Minn. Stat. § 80E.13(k), Minn. Stat. § 80E.13(p), ***and*** Minn. Stat. § 80E.17 (which Ford entirely ignores) that "the prescribed remedies herein only apply to proposals and arrangements that do not involve the establishment of a new franchise or dealership." That language similarly does not exist in the text of the statute. Because the MVSDA does not include such language, by law, Ford cannot read such language into the statute to support its misguided interpretation in support of its motion to dismiss.

C.   **The "specific / general" canon of statutory interpretation is inapplicable**

Ford attempts to buttress its argument and circumvent the application of Minn. Stat. § 80E.13(k) and (p) by arguing that Minn. Stat. § 80E.14 is a more "specific" provision that should control over the more "general" provisions advanced by Anderson & Koch.

24

Ford Br. at 6-7. This argument fails for two independent reasons. First, it overlooks the well-settled rule that this canon of statutory construction is operative only where the general statute and the specific statute are in irreconcilable conflict. Second, Minn. Stat. § 80E.13(k) and (p) are just as specific—if not more specific—than Minn. Stat. § 80E.14 because the Proposed Change at issue contemplates the removal and reassignment of half of Anderson & Koch's Dealer's Locality and, in turn, a modification of its franchise. *See infra* Section II.D.

Ford recognizes that "Minnesota courts adhere to the widely accepted canon of statutory construction that *'when a conflict exists* between two or more statutory provisions, the specific provisions control.'" Ford Br. at 6-7 (quoting *Koehenv. Flagship Marine Co*., 947 N.W. 2d 448, 454 (Minn. 2020) (emphasis added)). The Minnesota legislature has codified this canon of construction as follows:

> When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. *If the conflict between the two provisions be irreconcilable*, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

Minn. Stat. § 645.26 (emphasis added).

While Ford acknowledges that this canon only applies if there is a conflict between two statutory provisions, its analysis ignores this threshold requirement before advocating for its application. But there is no irreconcilable conflict—or, indeed, any conflict whatsoever—between Minn. Stat. § 80E.13(k) and (p), on the one hand, and Minn. Stat. § 80E.14, on the other. Each provision prohibits manufacturers from taking certain actions

25

against dealers as being unlawful or unfair. As evidenced by the cases discussed above, there are instances in which a manufacturer's actions implicate multiple provisions under the MVSDA. That potential overlap does not create an irreconcilable conflict, however, sufficient to invoke the "specific / general" canon of construction—nor does Ford elaborate on any such conflict.

Indeed, the United States District Court for the Southern District of Alabama recently rejected Ford's *exact* same argument under a similar statutory scheme in *GPI-AL, Inc. v. Nissan N. Am., Inc*., No. CV 17-0511-WS-MU, 2019 WL 5269101 (S.D. Ala. Oct. 17, 2019). There, a dealer brought claims under the Alabama Motor Vehicle Franchise Act, and the manufacturer argued (as Ford does here) that the provision restricting the addition of new dealerships was exclusive under the "specific / general" canon of construction:

> NNA maintains that Count Three is legally barred because of what it terms the "specific/general doctrine." The argument is as follows: Alabama law provides that a specific statute controls a more general statute. . . . NNA characterizes § 8-20-4(3)(l) – the section of the MVFA at issue in Count One that forbids a motor vehicle manufacturer from unreasonably appointing a new dealer in the same market area served by an existing dealer – as a specific statute governing challenges to "open point" decisions. By contrast, NNA frames § 8-20-4(2) – the MVFA section at issue in Count Three that bars a manufacturer from acting unreasonably or in bad faith toward a franchise – as a general statute. Applying the "specific/general" canon of statutory construction, then, defendant reasons that "Section 8-20-4(3)(l) is the exclusive method of challenging the establishment of the proposed new dealership," such that Count Three must be dismissed.

*Id*. at *10. The court flatly rejected this argument because "Defendant identifies no conflict, and indeed no tension, between § 8-20-4(3)(l) and § 8-20-4(2)." *Id*. The court further explained that "nothing in the text of the MVFA suggests that the Alabama legislature intended to afford primacy to § 8-20-4(3)(l), much less to make that subsection the sole

method by which a dealer might challenge specific instances of allegedly unreasonable or arbitrary conduct by a manufacturer that relate in some way to an open point decision." *Id*.

Not only is the decision in *GPI-AL, Inc.* on all fours, it has the added benefit of making intuitive sense. As in *GPI-AL, Inc*., nothing in the text of the MVSDA suggests that the Minnesota legislature intended to afford primacy to Minn. Stat. § 80E.14, much less to make that provision the sole method by which Anderson & Koch may challenge the Proposed Change because it relates in some way to the establishment of a new dealership.

### D. Even if the "specific / general" canon of statutory interpretation applied, it would compel the denial of Ford's motion

Yet even if the "specific / general" canon of construction did apply (which it does not), Minn. Stat. § 80E.13(k) and (p) are *more* specific than Minn. Stat. § 80E.14 because they address the specific conduct underlying the Proposed Change.

Anderson & Koch is challenging the removal of half of its census tracts and the re-assignment of those tracts to a new dealership within Anderson & Koch's existing Dealer's Locality.  Unlike Section 80E.14, Section 80E.13(k) directly addresses "*modify[ing] . . . a franchise with a succeeding franchise* . . . ." And also unlike Section 80E.14, Section 80E.13(p) addresses "*assign[ing] or chang[ing] a dealer's area of sales effectiveness* arbitrarily or without due regard to the present pattern of motor vehicles sales and registrations with the dealer's market." The Proposed Change is the specific type of conduct prohibited by these provisions of the MVSDA.

Ford does not, because it cannot, explain how Section 80E.14 is more specific than the provisions of the MVSDA that specifically relate to the modification of a franchise in

favor of a new franchise and the assignment and change of a dealer's area of sales effectiveness—which is exactly what Ford seeks to do through the Proposed Change. Instead, Ford asserts that Section 80E.14 provides "specific notice procedures" and "outlines a specific challenge procedure." Ford Br. at 7. But so too does Section 80E.13. Among other things, Section 80E.13(p) provides for a "90 days' notice of the proposed change," a challenge procedure through the commencement of a "civil action," the imposition of a "burden of proof in such an action," and a non-exclusive list of "relevant circumstances" for the court to consider in connection with evidentiary proceedings in the action. Ford's argument premised on the "specific / general" canon of statutory interpretation fails.

**E.   Ford's only substantive argument based on the language of the Dealer Agreement fails**

Ford's *only* argument addressing the actual claims alleged in Anderson & Koch's Complaint is that Count I (for violation of Minn. Stat. § 80E.13(k)) should be dismissed because a change to the Dealer's Locality is not a "modification" of Anderson & Koch's franchise. *See* Ford Br. at 2 n.1. Ford relegates this argument to a footnote likely because it is well settled that the parties' Dealer Agreement cannot circumvent or abrogate Anderson & Koch's statutorily-provided remedies in the MVSDA. *See Astleford Equip. Co. v. Navistar Int'l Transp. Corp.*, 611 N.W.2d 33, 35 (Minn. App. 2000), *aff'd in part, rev'd in part*, 632 N.W.2d 182 (Minn. 2001) (holding that a similar manufacturer and dealer statute prohibits a manufacturer from engaging in conduct even if the contract between the manufacturer and the existing dealership permits the conduct).

To be sure, the Hennepin County District Court has expressly rejected this same recycled argument: "Under the current dealership agreement, the area of responsibility remains non-exclusive, and Navistar can change it at will. Nonetheless, under Section 80E.13(k) there are circumstances in which doing so can rise to the level of modifying or replacing the dealership agreement or substantially impairing the dealer's obligations or investments. Therefore, . . . the dealership agreement . . . cannot buffer Navistar from potential liability under Section 80E.13(k)." Thomas Aff., Ex. B at 9 (*North Star Int'l Trucks, Inc. v. Navistar, Inc*., Court File No. 27-cv-10-511 (Henn. Cty., 4th Judicial Dist.) (Hon. Susan Burke) (June 30, 2010 Motion to Dismiss Order). Anderson & Koch has provided painstaking detail in its Complaint demonstrating how the Proposed Change modifies its franchise.

\*   \*   \*

There is no support in either the text of the MVSDA or the cases that have interpreted it that provide or suggest that Section 80E.14 is somehow the exclusive means by which Anderson & Koch may challenge the Proposed Change.  Accordingly, the Court should reject Ford's attempt to improperly limit Anderson & Koch's rights and remedies under the MVSDA.

## III.   FORD'S OUT-OF-STATE AUTHORITIES ARE FACTUALLY AND LEGALLY INAPPOSITE

Ford relies on several out-of-state authorities to argue that "[c]ourts have consistently held that where . . . the legislature establishes specific add point procedures and limits which dealers have standing to use them, those procedures provide the exclusive

means for challenging an add point." Ford Br. at 5. As discussed below, each such decision is factually inapposite to the Proposed Change at issue here ***and*** legally inapposite to the MVSDA—a unique statutory scheme that does not exist in ***any*** of the out-of-state authorities relied upon by Ford. As such, these authorities do not support Ford's position and do not compel dismissal of Anderson & Koch's claims.

Ford first relies upon *Parktown Imp., Inc. v. Audi of Am., Inc*., 278 S.W.3d 670 (Mo. 2009). In that case, Audi provided its dealer with an opportunity to construct a new stand-alone facility designed by Audi or to purchase an existing dealership. *Id*. at 671. The dealer rejected both proposals. *Id*. When Audi subsequently established a new dealership 10 miles east of the dealer's existing location, the dealer brought suit under Section 407.825(1) of Missouri's Motor Vehicle Franchise Practices Act, "alleging that Audi's decision to establish a new dealership was not motivated by proper business considerations, but, rather, was a capricious, bad faith, or unconscionable retaliation against [the dealer] for refusing to move its existing facilities." *Id*. at 672. The court held that Section 407.825(1) creates only a general cause of action against a manufacturer for conduct that is "capricious, in bad faith, or unconscionable" and that a separate statute, Section 407.817, "is the sole and exclusive authority for challenging the establishment of a new motor vehicle dealership" because it is the "only section" that addresses the rights and obligations of franchisors and franchisees with respect to adding new dealerships. *Id*. at 672-73. The court observed that the legislative intent was to set a six-mile radius of protection and that "outside of that six-mile radius, the legislature intended the open market to govern itself." *Id*. at 673. The facts and relevant statutory language in *Parkview* are inapposite.

30

First, in *Parkview*, Audi did not attempt to remove and reassign any portion of the dealer's territory (let alone half of its territory as is the case here) to a new dealership within the dealer's existing territory. The ***only*** conduct at issue was the establishment of a new dealership. Notably, the court held that "[a]llowing Parktown to bring a claim under § 417.825(1), ***solely on the basis of Audi establishing a new motor vehicle dealership***, would abrogate policy decisions made by the legislature in enacting § 407.817." *Id.* at 673-74 (emphasis added). Of course, the conduct at issue here goes beyond Ford merely establishing a new dealership.

Second, Anderson & Koch is not relying on a general statutory prohibition against "capricious," "bad faith," or "unconscionable" conduct. Instead, and unlike the Missouri statute at issue in *Parktown*, Anderson & Koch is seeking to enforce two unique Minnesota statutory provisions that specifically preclude Ford from: (1) modifying or replacing Anderson & Koch's franchise with a succeeding franchise to the extent it adversely affects Anderson & Koch's sales or service obligations or investments; and (2) assigning or changing Anderson & Koch's Dealer's Locality without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market. *See* Minn. Stat. § 80E.13(k) and (p). In *Parktown*, the Missouri legislature had not enacted any comparable laws, and instead evidenced an intent to allow "the open market to govern itself" outside of the "six-mile radius." *Id.* at 673. By enacting Minn. Stat. § 80E.13(k) and (p) of the MVSDA, the Minnesota legislature has taken the opposite approach and evidenced an intent to protect dealers beyond the simple application of a geographic radius.

31

*Am. Honda Motor Co., Inc. v. Bernardi's, Inc.*, 735 N.E.2d 348 (Mass. 2000) is distinguishable for the same factual and legal reasons. First, like *Parktown*, the dealer was only challenging the manufacturer's establishment of a new dealership. *Id*. at 349. The manufacturer was not attempting to remove and reassign the dealer's relevant territory to a new dealership within the dealer's existing territory. *Id*. Second, the Massachusetts statute under which the dealer brought its claim was similar to the Missouri statute in *Parktown* in that it prohibited "any action which is arbitrary, in bad faith, or unconscionable." *Id*. at 355. The statute did "not proscribe a particular act or practice, but rather is more general in scope." *Id*. In contrast, Minn. Stat. § 80E.13(k) and (p) proscribe specific actions, such as (1) modifying or replacing Anderson & Koch's franchise with a succeeding franchise; and (2) assigning or changing Anderson & Koch's Dealer's Locality without due regard to the pattern of motor vehicle sales and registrations.

Ford's reliance on *JJM Sunrise Automotive, LLC v. Volkswagen Group of America, Inc*., 46 Misc. 3d 755, 997 N.Y.S.2d 270 (N.Y. Sup. Ct. 2014) fares no better. First, the manufacturer was not attempting to strip and re-assign plaintiff's territory to a new dealership within plaintiff's existing territory. Rather, plaintiff was merely protesting the establishment of a new dealership outside its relevant market area. *Id*. at 758, 765. Second, while the relevant New York statute prohibited certain modifications to a franchise, the statute did not prohibit modifications to a franchise undertaken in favor of a new dealership. *Compare* Minn. Stat. § 80E.13(k) (making it unlawful to "modify or replace a franchise ***with a succeeding franchise***") (emphasis added), *with* N.Y. Veh. & Traf. Law § 463(2)(ff) (containing no such prohibition).

32

Ford's remaining cases are similarly distinguishable. *Luxury Autos Of Huntington, Inc. v. Volkswagen Group of Am., Inc*., No. 602591-14, 2015 WL 9998814, at *6 (N.Y. Sup. Ct. Sep. 24, 2015) is premised on the same materially dissimilar statute as *JJM Sunrise*, and it was further unclear whether the new dealership was even intended to be established within the dealer's existing territory, as is the case here.  In *Don Simmons, Inc., et al. v. Subaru of Am., et al.*, Sup. Ct., Chemung County, Mar. 15, 2018, O'Shea, J., Index No. 2017-1930 (Ford Br., Ex. 1), the dealer only challenged the establishment of a new dealership. Finally, the decision by the Commissioner of the North Carolina Division of Motor Vehicles in *Bob Dunn Jaguar, Inc. v. Ford Motor Co*. (Ford Br., Ex. 2) actually **supports** Anderson & Koch's position. There, after the Commissioner determined that the dealer had no right to challenge the establishment of a new dealership under Subsection 5 of North Carolina's applicable law (which prohibited the establishment of a new dealership within a specific geographic radius similar to Minn. Stat. § 80E.14) because it was outside the dealer's relevant market area, it expressly determined that the dealer did have an independent right to contest the intended change to its dealer territory in favor of the new dealership under Subsection 38 (which prohibited certain changes to a dealer's area of responsibility similar to Minn. Stat. § 80E.13(p)).

*  *  *

At bottom, these out-of-state cases do not involve the same type of Proposed Change at issue here, nor were they decided based on the unique provisions of the MVSDA at the center of this litigation. They are factually and legally distinguishable and, as such, are neither persuasive nor applicable.

33

## IV.   ANDERSON & KOCH HAS PROPERLY PLED A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Ford argues that Anderson & Koch's failure to assert an independent breach of contract claim is fatal to its "stand-alone" claim for breach of the covenant of good faith and fair dealing. Ford Br. at 8-10. In doing so, Ford misconstrues Minnesota law.

Ford relies on *Medtronic, Inc. v. Convacare, Inc.*, in which the Eighth Circuit observed that "Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim." 17 F.3d 252, 256 (8th Cir. 1994). "To be sure, 'a cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim' in the sense that an enforceable contract must exist before the duty of good faith and fair dealing can be implied by law into it." *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 670 (8th Cir. 2012) (citing *Orthomet, Inc. v. A.B. Med., Inc*., 990 F.2d 387, 392 (8th Cir. 1993)); *see also Grady v. Progressive Direct Ins. Co.*, ___ F. Supp. 3d ___, 2022 WL 18494898, at *6 (D. Minn. 2022) (observing, contrary to Ford's assertions, that the holding in *Medtronic, Inc*. simply means that "[a] malicious or bad-faith motive in breaching a contract does not convert a contract action into a tort action").

While an enforceable contract must exist before the duty of good faith and fair dealing can be implied into it under Minnesota law, "that does not mean that plaintiffs must 'first establish an express breach of contract claim—indeed, a claim for breach of an implied covenant of good faith and fair dealing ***implicitly assumes the parties did not expressly articulate the covenant allegedly breached***.'" *Cox*, 685 F.3d at 670 (quoting *In*

*re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 503 (Minn. 1995) (emphasis added)).

Accordingly, a claim for breach of the covenant of good faith and fair dealing **can** be a standalone claim under Minnesota law so long as there is an enforceable contract between the parties and the claim "does not extend to actions beyond the scope of the underlying contract."[8] *In re Hennepin Cty.*, 540 N.W.2d at 503; *Cox*, 685 F.3d at 671 ("[T]he district court erred in dismissing the homeowners' claim for breach of the duty of good faith based on the homeowners' failure to assert an independent breach of an express contractual duty.").

Such is the case here. Anderson & Koch and Ford are parties to the Dealer Agreement. *See* Compl., Ex. A. The Dealer Agreement includes provisions relating to "Dealer's Locality," which constitutes the geographical region in which Anderson & Koch is responsible for effectively selling, servicing, and otherwise representing Ford's products. *Id.*, Ex. A § 1(j). Through this action, Anderson & Koch has challenged the Proposed Change—by which Ford seeks to remove half of the census tracts from its Dealer's Locality and re-assign those tracts to a new dealership within its existing Dealer's

---

[8] Ford similarly misinterprets *Moser v. Katun Corp.*, No. 27CV06-15688, 2007 WL 6362603 (Minn. Dist. Ct. June 15, 2007). In *Moser*, the court did not find that the plaintiff's failure to plead an independent breach of contract claim resulted in dismissal of the good faith and fair dealing claim. Rather, the court determined that the underlying contracts could not support the claim because one agreement was not yet in existence and the other contained an arbitration clause. Moreover, the court held that the claim was "independent of either underlying contract."

Locality—as a violation of the covenant of good faith and fair dealing implied in the Dealer Agreement.

Simply put, under Minnesota law, there is no requirement that Anderson & Koch plead an independent breach of contract claim before asserting a breach of the implied covenant of good faith and fair dealing. Because the underlying conduct that Anderson & Koch challenges here (*i.e.*, the Proposed Change) is within the scope of the Dealer Agreement, the Court should deny Ford's motion as it relates to Anderson & Koch's claim for breach of the covenant of good faith and fair dealing.

## CONCLUSION

For the forgoing reasons, the Court should deny Ford's motion to dismiss. Anderson & Koch's Complaint easily satisfies Rule 12 scrutiny.

Dated: May 2, 2023

**TAFT STETTINIUS & HOLLISTER LLP**

By: */s/ Aaron G. Thomas*

    Aaron G. Thomas (#0389011)
    athomas@taftlaw.com
    Jordan L. Weber (#0396769)
    jweber@taftlaw.com
    Yuka Shiotani (#401989)
    yshiotani@taftlaw.com
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
Telephone:  (612) 977-8400
Facsimile:   (612) 977-8650

**ATTORNEYS FOR PLAINTIFF ANDERSON & KOCH FORD, INC.**

36