UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anderson & Koch Ford, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Ford Motor Company,<br><br>Defendant. | Case No. 0:23-cv-00762 (PJS/DTS)<br><br>**FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO CIVIL RULE 12(B)(6)** |

Ford Motor Company ("Ford") moved to dismiss Plaintiff Anderson & Koch Ford, Inc.'s ("Plaintiff") Complaint on the grounds that Plaintiff is improperly attempting to use Sections 80E.13(k) and (p) of the Minnesota Motor Vehicle Sale and Distribution Act ("MVDSA"), which only applies to locality changes and franchise modifications, to prevent Ford from opening a new dealership in Forest Lake Minnesota (the "New Dealership"). Any challenge to the New Dealership must be under Minnesota's Add Point Statute (Minn. Stat. § 80E.14), which Plaintiff did not pursue as it lacks standing to do so.

Ford has notified Plaintiff that Plaintiff's contractual Locality (the area against which its performance will be assessed) will change. Plaintiff can assert claims under Sections 80E.13(k) and (p) to challenge that proposed Locality change, which Ford would dispute, but Plaintiff cannot appropriately claim that either or both statutes also allow it to challenge the New Dealership's appointment. Minnesota law limits any challenge to a new dealership to claims which may be brought under Section 80E.14, which requires that the

4892-8329-5588.1

new dealer be located within the challenging dealer's "Relevant Market Area."[1] The New Dealership is located outside of Plaintiff's Relevant Market Area and as a result, Plaintiff lacks standing to pursue that cause of action. As Plaintiff seeks to prevent the New Dealership from opening, its Complaint should be dismissed as a matter of law.

1. *Plaintiff's "Straw-Man" Contention Goes Up in Flames*

Plaintiff contends Ford erected a "straw-man argument" in its Motion to Dismiss by incorrectly claiming Plaintiff was attempting to challenge Ford's appointment of the New Dealership. (Doc. 19, p. 23). The Complaint's express language, however, demonstrates the fallacy of Plaintiff's "straw-man" contention. Plaintiff repeatedly sought "an injunction against… the establishment of the Proposed New Dealership in the Dealer's Locality" throughout the Complaint. (Doc. 1-1, p. 18-19 at ¶¶56, 62, 67(ii)). By repeatedly seeking this relief, Plaintiff revealed its true intent: to stop Ford's appointment of the New Dealership.[2] As a result, Plaintiff's Complaint equates to a challenge to the appointment of a new dealership, which is governed solely by Section 80E.14.

2. *Section 80E.14 Provides the Exclusive Procedure for Challenging the Appointment of a New Dealership.*

In Section 80E.14, the Minnesota legislature implemented a comprehensive procedure to challenge a manufacturer's establishment of a new dealership. Section 80E.14

---

[1] The RMA is defined as: "a radius of ten miles around an existing dealership." Minn. Stat. § 80E.14(1).

[2] Plaintiff went to great lengths in its Memorandum to portray its action as nothing more than a challenge to the proposed locality change. If Plaintiff's position is accurate and Plaintiff is willing to withdraw its demand for injunctive relief regarding the appointment of the New Dealership, Ford will withdraw its Motion to Dismiss as to Counts I, II, and III.

provides that an existing dealer may challenge the establishment of a new dealer *only* if the new dealer will be within the existing dealer's Relevant Market Area. This statutory provision provides the exclusive statutory mechanism for existing dealers to challenge the establishment of a new dealership. No other statute, including Section 80E.13, provide a Minnesota dealership with the right to challenge a new dealer appointment. As a result, an existing dealer may not bring a claim relating to the establishment of a new dealership under the provisions of the MVDSA that do not specifically address the opening of new dealerships. *See, e.g., Parktown Imports, Inc. v. Audi of Am., Inc.,* 278 S.W.3d 670, 673 (Mo. 2009) (Missouri Supreme Court held that because the Missouri dealer law contained a specific add-point protest provision, the dealer could not challenge the establishment of the new dealer under less specific state statutes).

Plaintiff cannot avoid this conclusion by attempting to intertwine its allegations relating to Ford's decision to appoint the New Dealership with their allegations of statutory violations relating to a locality change. These actions by Ford, while related, are not dependent. In other words, Ford is not required to change Plaintiff's contractual Locality because it is appointing a new dealer. Rather, Ford is proposing to change Plaintiff's Locality because some of the territory now assigned to Plaintiff will be closer to the new dealership. Any judicial decision that this change in Locality is somehow inappropriate under Section 80E.13(p) will not mean that Ford cannot allow the New Dealership to open. A finding in Plaintiff's favor would simply mean that Plaintiff will retain the geography in its current Locality and thus be responsible for sales within geography that is closer to the New Dealership.

Likewise, a finding that the Locality change is an inappropriate modification of Plaintiff's dealer agreement under Section 80E.13(k), does not mean that Ford cannot approve the New Dealership's opening. It only means that Plaintiff's Locality must remain the same that it is now, despite the opening of the New Dealership. Sections 80E.13(k) and (p) address only changes to areas of responsibility and modifications to dealer agreements. They make no mention of the appointment of a new dealership, let alone provide a mechanism to challenge the appointment of a new dealership. Minn. Stat. § 80E.13(k), (p). Here, Plaintiff's allegations merely purport to relate to Ford's proposed locality change but at bottom seek an injunction preventing the appointment of a new dealership. Thus, the action is nothing more than an attempt to challenge the appointment of the New Dealership outside the confines of Section 80E.14.

If the legislature had intended any provision of Section 80E.13 to act as a separate ground for challenging a new dealership, it would have done so in the text of the statute. It did not and consequently, these are two separate claims and should be treated as such. Because of its specifically plead request for relief, Plaintiff cannot now transform its poorly disguised establishment challenge into other claims in the hopes of avoiding dismissal.

### 3. *Plaintiff's Attempt to Distinguish Case Law Cited in Ford's Motion Fails.*

Ford cited to multiple cases form other jurisdictions where it was determined that specific statutory add-point statutes[3] provide the exclusive procedure for challenging the

---

[3] Additional new vehicle dealerships are often referred to as "add points."

establishment of a new dealership. Plaintiff's response attempts, to no avail, to distinguish the authorities cited in Ford's brief.

First, Plaintiff argues that the dealers in *Parktown Imps., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670 (Mo. 2009) and *American Honda Motor Co. v. Bernardi's, Inc.*, 432 Mass. 425, 435 (Mass. 2000) attempted to block the opening of a new dealership by using statutory provisions prohibiting generalized prohibited conduct, whereas Plaintiff's claims under section 80E.13 address specific actions related to a locality change and claimed modification of an existing franchise. (Doc. 19, p. 31). This contention misses the point of those cases. Both *Parktown* and *Bernardi's* stand for the proposition that the legislature's adoption of a comprehensive scheme to challenge the appointment of a new dealership, like that in Section 80E.14, precludes plaintiffs that do not qualify under that scheme from seeking the same relief from other statutes that do not specifically address the appointment of new dealers. So, whether a plaintiff alleges generalized "bad faith" or an improper change to an area of responsibility, those "off topic" statutes may not be used to obtain the relief a plaintiff cannot obtain under the specific statute addressing permissible challenges to additional new dealerships.

Second, Plaintiff attempts to distinguish *JJM Sunrise Automotive, LLC., Luxury Autos of Huntington, Inc.* and *Don Simmons, Inc.* by arguing each case only involved an add point challenge, while its claims involve a proposed locality change. Plaintiff is correct about each case, but once again ignores that, pursuant to the language of its own Complaint, it has also pursued an add point challenge. Thus, each of these cases are on point.

4892-8329-5588.1

Third, Plaintiff inexplicably argues that *Bob Dunn Jaguar, Inc.* supports its arguments against dismissal. A closer look at this decision demonstrates just the opposite. Like Plaintiff here, the plaintiff in *Bob Dunn* was attempting to disguise an add-point challenge as a locality change challenge. As the Commissioner in *Bob Dunn* found while dismissing the claim, "Subsection 38 [North Carolina's locality change statute] protects the dealer from unreasonable or arbitrary AOR definitions, ***not from the appointment of a new dealer outside the protesting dealer's RMA***." (Doc. 16, p. 16) (material and emphasis added). Plaintiff is attempting the same thing here and, as a result, its Complaint should meet the same fate.

### 4. The Case Law Cited by Plaintiff is Distinguishable.

Plaintiff also gives a lengthy analysis of a Hennepin County trial court decision as authority for its opposition to Ford's Motion to Dismiss, asserting it supports the contention that Section 80E.13(k) and (p) provide independent means to challenge the establishment of a new dealership. The Hennepin County District Court's decision in *North Star Int'l Trucks, Inc. v. Navistar, Inc.*, however, does not support this contention.

While the plaintiff in *North Star* was attempting to challenge a locality change, it was *not* attempting to challenge the establishment of a new dealership outside of its statutory Relevant Market Area under the same statute. The *North Star* plaintiff objected to the alleged *de facto* establishment of a new dealership *in its Relevant Market Area under Section 80E.14*. Additionally, the Court did allow a separate claim regarding a change to North Star's area of responsibility to move forward but was simply not confronted with the issue that the plaintiff lacked standing to object to the appointment of a new dealer in the

6

first place. In short, the Hennepin County District Court simply did not find that a motor vehicle dealer could challenge the establishment of a new dealership, regardless of the new dealer's location, under any provision of Section 80E.13. Accordingly, *North Star* is not instructive.

The same can be said of Plaintiff's reliance upon *Shakopee Chevrolet, Inc. v. General Motors LLC.*, No. CV 20-2366 (JRT/LIB), 2021 WL 1785229 (D. Minn. May 5, 2021). In *Shakopee*, the dealership objected to General Motors' proposal to add six census tracks to its "Area of Primary Responsibility." *Id*. at 1. The dealer filed suit against General Motors under both Section 80E.13(k) and (p), claiming the locality change was improper. *Id.* While *Shakopee* dealt with a locality change challenge, it did not involve a corresponding challenge to the appointment of a new dealership. Nor does *Shakopee* hold that a Minnesota dealer can use Section 80E.13(p) or (k) to challenge the establishment of a new dealership.

Plaintiff cited to *Shakopee* for the proposition that "Judge Tunheim recognized that each of the provisions within the MVDSA are independent … and that the application of one provision is not exclusive over the application of another relevant provision." (Doc. 19, p. 23). This misconstrues *Shakopee*'s holding. The *Shakopee* court found only "that the existence of 801.13(p) does not bar claims under 80E.13(k) when the APR modification is substantial enough to threaten the franchise's existing rights and liabilities." *Id*. at *4.[4]

---

[4] Ford is not arguing that Plaintiff cannot bring corresponding locality change claims under both Sections 80E.13(p) and (k). Ford's argument is limited to Plaintiff's attempt to use these statues to challenge the appointment of a new dealership outside its statutory Relevant Market Area.

7

*Shakopee*, however, does not find that Section 80E.13 claims can be used to enjoin the opening of a new dealership when a plaintiff lacks standing under Section 80E.14, the provision addressing the appointment of new dealerships. Accordingly, it, too, is inapplicable to the present action.

Finally, the Southern District of Alabama's decision is *GPI-AL, Inc. v. Nissan North America, Inc.,* 2019 WL 5269101, is also distinguishable. First, this decision involves Alabama law and therefore is not binding on this Court. Second, the District Court's allowed non-add point claims to move forward, despite an add point specific statute that the dealer had also invoked, because the statutes were not in conflict. Specifically, the new dealer location proposed by Nissan was in the dealer's Alabama statutory relevant market area. Here, we have just the opposite. Plaintiff is attempting to utilize Section 80E.13 to challenge the establishment of a new Ford dealership *outside* of its Relevant Market Area. Consequently, *GPI-Al, Inc.* is nonbinding, distinguishable, and this Court should disregard it.

5. ***Plaintiff Did Not State a Viable Claim for Breach Implied Duty of Good Faith and Fair Dealing Claim.***

Contrary to Plaintiff's assertion, a breach of the implied duty of good faith and fair dealing, is not a stand-alone claim. *See Wild v. Rarig*, 234 N.W. 2d 775, 790 (Minn. 1975). Dismissal of Plaintiff's breach of the implied duty of good faith and fair dealing claim is warranted because Plaintiff asserts it as a stand-alone claim. Plaintiff has not asserted a breach of contract action against Ford in the Complaint. Plaintiff merely *refers* to a "Dealer Agreement" in the Complaint and attaches a copy of this Agreement to the Complaint.

8

Plaintiff, however, does not argue that Ford breached any specific provision of the Dealer Agreement. Plaintiff does not assert that the Dealer Agreement prevents Ford from making any changes to its locality or that it prohibits Ford from establishing a new Ford dealership in its locality. (Doc. 1-1, p. 27 at ¶ 9(j)); (Doc. 1-1, p. 38 at 9(c)).

Instead, Plaintiff attempts to justify its good faith and fair dealing claim by alleging that Ford was either acting unreasonably or inconsistent with Plaintiff's expectations under the Dealer Agreement or that it effectively denied Plaintiff its expected benefits under the Agreement. (Doc. 1-1, p. 20-21 at ¶¶ 69-73). But Plaintiff failed to identify any specific provision of the Agreement – even in its Opposition – that Ford has allegedly breached. Thus, Plaintiff's breach of the implied duty of good faith and fair dealing claim cannot survive.

## 6. *Conclusion*

For the reasons stated above, and in Ford's Motion to Dismiss, this Court should dismiss Plaintiff's Complaint, with prejudice.

Date: May 16, 2023

Respectfully submitted,

/s/ *Jeremiah J. Wood*
Elizabeth A. McNellie (Admitted *pro hac vice*)
Jeremiah J. Wood (Admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
200 Civic Center Drive, Suite 1200
Columbus, OH  43215-4138
Telephone:   (614) 228-1541
Facsimile:   (614) 462-2616
emcnellie@bakerlaw.com
jjwood@bakerlaw.com

Sheila T. Kerwin (#220309)
Chelsea E. Vilchis (#402156)
**NILAN JOHNSON LEWIS PA**
250 Marquette Avenue S., Suite 800
Minneapolis, MN 55401
Telephone: (612) 305-7500
Fax: (612) 305-7501
skerwin@nilanjohnson.com
cvilchis@nilanjohnson.com

*Attorneys for Defendant
Ford Motor Company*

4892-8329-5588.1

## LR 7.1(F) (2) CERTIFICATE OF COMPLIANCE

Ford Motor Company hereby certifies that this Memorandum of Law complies with both the word and line limits set forth in Local Rule 7.1(f)(1). This memorandum includes 2,430 words and 196 lines of text. These numbers were determined by using the word and line count functions included with Microsoft Word for Microsoft 365 MSO (Version 2208). Ford certifies that these word and line count tools were applied to include all text, including headings, footnotes, and quotations, excluding the text and lines found in the sections of the memorandum set forth in LR 7.1(f)(1)(C).

*/s/ Jeremiah J. Wood*
Jeremiah J. Wood

## **CERTIFICATE OF SERVICE**

This is to certify that on May 16, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Aaron G. Thomas
Jordan L. Weber
Yuka Shiotani
Taft Stettinius & Hollister LLP
2200 EDS Center
80 South 8th Street
Minneapolis, MN 55402-2210
athomas@taftlaw.com
jweber@taftlaw.com
yshiotani@taftlaw.com

*Attorneys for Plaintiff*
*Anderson & Koch Ford, Inc.*

                                              */s/ Jeremiah J. Wood*
                                              Jeremiah J. Wood

4892-8329-5588.1