# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1204
_____

Anderson & Koch Ford, Inc.

*Plaintiff - Appellant*

v.

Ford Motor Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 24, 2024
Filed: July 10, 2025

_____

Before LOKEN, SMITH, and GRASZ, Circuit Judges.

_____

LOKEN, Circuit Judge.

    Anderson & Koch Ford, Inc. is a Ford dealership located in North Branch, Minnesota. It sells and services Ford vehicles under a Ford Sales and Service Agreement ("Dealership Agreement") that governs their relationship. In late 2022, Ford gave notice of its intent to establish a new dealership in Forest Lake, Minnesota, approximately twenty-five miles from Anderson & Koch's North Branch location, and to assign to the new dealership half of the census tracts making up Anderson &

Koch's "Dealer's Locality." Anderson & Koch filed this action in state court, alleging violations of the Minnesota Motor Vehicle Sale and Distribution Act ("MVSDA"), Minn. Stat. § 80E.13(k) and (p), in Counts I, II, and III of the Complaint.[1]

Ford removed the action, invoking diversity jurisdiction, and moved to dismiss. The district court[2] granted Ford's motion in part, concluding that Counts I, II, and III failed to state a claim "to the extent that those counts seek relief against the proposed new Ford dealership in Forest Lake, Minnesota." Anderson & Koch appeals. Reviewing *de novo*, we first conclude that we have appellate jurisdiction under 28 U.S.C. § 1291. Turning to the merits, we agree with the district court that Anderson & Koch failed to state a claim regarding the establishment of a new dealership under § 80E.13(k) or (p) and therefore affirm. We need not decide Ford's assertion that another provision in the MVSDA, § 80E.14, is the sole mechanism to challenge a motor vehicle manufacturer's establishment of a new dealership.

## I. Background and Procedural History

**A. The Minnesota Statute at Issue.** Enacted in 1981, the MVSDA regulates and licenses motor vehicle manufacturers and dealers of motor vehicles doing business in Minnesota "to prevent fraud, impositions, and other abuses . . . and to protect and preserve the investments and properties of the citizens of this state." Minn. Stat. § 80E.01. The statute defines "Franchise" as "the written agreement or contract between any new motor vehicle manufacturer and any new motor vehicle dealer which grants to the dealer the right to market motor vehicles and which

---

[1] Count IV of the Complaint alleged breach of the covenant of good faith and fair dealing. That claim is not at issue on appeal.

[2] The Honorable Patrick J. Schiltz, Chief Judge of the United States District Court for the District of Minnesota.

-2-

purports to fix the legal rights and liabilities of the parties." § 80E.03, subd. 8. The parties agree that the Dealership Agreement is an MVSDA franchise.

Three provisions in two sections of the MVSDA are the focus of this appeal. To our knowledge, the statutory language relevant to this appeal has not previously been interpreted by the Supreme Court of Minnesota. Section 80E.13 proscribes "Unfair practices by manufacturers, distributors, factory branches." Subsection (k) makes it unlawful to:

> (k) threaten to modify or replace or modify or replace a franchise with a succeeding franchise that would adversely alter the rights or obligations of a new motor vehicle dealer under an existing franchise or that substantially impairs the sales or service obligations or investments of the motor vehicle dealer.

Subsection (p) makes it unlawful to:

> (p) assign or change a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market. The manufacturer . . . must provide at least 90 days' notice of the proposed change. The change may not take effect if the dealer commences a civil action within the 90 days' notice period to determine whether the manufacturer . . . met its obligations under this section. The burden of proof in such an action shall be on the manufacturer.

Section 80E.14 prescribes "Limitations on establishing or relocating dealerships." Subdivision 1 provides in relevant part:

> **Notification; protest; hearing.** In the event that a manufacturer seeks to enter into a franchise establishing an additional new motor vehicle dealership or relocating an existing new motor vehicle dealership within or into a relevant market area where the line make is then represented,

the manufacturer shall, in writing, first notify each new motor vehicle dealer in this line make in the relevant market area of the intention to establish an additional dealership . . . within or into that market area. The relevant market area is a radius of ten miles around an existing dealership. Within 30 days of receiving the notice . . . the new motor vehicle dealership may commence a civil action in a court of competent jurisdiction pursuant to section 80E.17 challenging the establishing . . . of the new motor vehicle dealership. . . . Thereafter the manufacturer shall not establish or relocate the proposed new motor vehicle dealership unless the court has determined that there is good cause for permitting the establishment or relocation.

**B. Relevant Contract Provisions.** Section 1(j) of the Dealership Agreement, first signed in 2004, defines "Dealer's Locality" as "the locality designated in writing to the Dealer by the Company from time to time as the area of the Dealer's sales and service responsibility for COMPANY PRODUCTS." The designated Locality is not set forth in the contract. Section 2(a) provides that "[t]he Dealer shall promote vigorously and aggressively the sale at retail . . . of CARS and TRUCKS to [customers] within the DEALER'S LOCALITY . . . but the Dealer shall not be limited to the DEALER'S LOCALITY in making sales." Section 9(c) provides that Ford "shall have the right to appoint additional dealers . . . within or without the DEALER'S LOCALITY." But if the new dealer will be within ten miles driving distance of Anderson & Koch's principal place of business, Ford must conduct a study pursuant to subparagraph 9(a) that reasonably demonstrates the appointment is necessary to provide proper sales and service representation in the locality and must give Anderson & Koch thirty days written notice and an opportunity to object.

These provisions establish that the Dealership Agreement is a non-exclusive relationship for both sides, subject to specific conditions regarding dealer performance and competition with other dealers in the Dealer's Locality.

**C. Procedural History.** In November 2022, Anderson & Koch's designated Locality included 18 census tracts in and around North Branch. On November 30, Ford gave written notice it intended to establish a new dealership in Forest Lake, some twenty miles away, and to eliminate half the census tracts in Anderson & Koch's Locality. In February 2023, Anderson & Koch wrote Ford advising "that the Proposed Change violates the express terms of Minnesota law, including [§ 80E.13(k) and (p)]," and notifying Ford that "prompt legal action will be taken against Ford if it does not immediately rescind the Notice and refrain from implementing the Proposed Change." Ford responded that the proposed new dealership did not violate the MVSDA because it is "more than twice the distance [from Anderson & Koch's] statutory relevant market area within which it could challenge the establishment of a new Ford dealership." Ford explained that if Ford established the new dealership but did not change Anderson & Koch's Locality, Anderson & Koch's performance would be assessed without considering the new dealership's existence. Thus, preventing Ford from changing Anderson & Koch's Locality would not "be in [Anderson & Koch's] best interest."

Though Ford provided the notice that may be required, Anderson and Koch did not commence a § 80E.14 civil action challenging the proposed new dealership. Instead, Anderson & Koch filed this action on February 28, 2023, alleging violations of § 80E.13(k) and (p) and seeking damages, declaratory relief, and an injunction barring Ford from changing Anderson & Koch's Locality *and* establishing the new dealership.[3] Anderson & Koch alleged it would "suffer severe market-compression and lose its relative proximity advantage" and expected its net profits to "decline by approximately twice the magnitude of any sales loss." Ford timely removed the

---

[3]The district court observed that Anderson & Koch could not have brought a claim under § 80E.14, subd. 1, because the new Forest Lake dealership would be more than 20 miles away from Anderson & Koch's relevant market area, and it did not sue within the specified 30-day time period.

action and moved to dismiss the Complaint, arguing the Proposed Change did not violate the MVSDA.

On November 30, 2023, the district court granted in part and denied in part Ford's motion to dismiss. The court noted that Anderson & Koch's "primary goal in filing this lawsuit is to block the establishment of the new (and competing) Ford dealership in Forest Lake." Therefore, the court separately analyzed the Complaint's challenge to establishing the new dealership and its challenge to the proposed change to Anderson & Koch's Locality. The court ruled that Anderson & Koch could challenge Ford's decision to reduce its Locality under § 80E.13(k) and (p) but could not challenge the establishment of the new dealership under those provisions.

**D. Appellate Jurisdiction.** In December 2023, Anderson & Koch notified Ford it intended to file a Federal Rule of Civil Procedure 54(b) motion for entry of final judgment on the dismissed claims. Ford declined to join that motion. The case was transferred to another district judge.[4] Anderson & Koch and Ford entered into a stipulation agreeing that the remaining Locality claims be dismissed *without prejudice*. See Fed. R. Civ. P. 41(a)(1)(A)(ii). The district court, pursuant to this stipulation, entered an order dismissing without prejudice "all claims not previously dismissed by the Court's November 30, 2023 Order." Anderson & Koch then filed its notice of appeal.

A federal circuit court of appeals has "jurisdiction of appeals from all final decisions of the district courts [of that circuit] . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. The district court's November 23 Order being appealed was not a "final decision" because the court declined to dismiss Anderson & Koch's claims challenging Ford's proposed Locality reduction. See,

---

[4]The Honorable Jeffrey M. Bryan, United States District Judge for the District of Minnesota.

e.g., Core & Main, LP v. McCabe, 62 F.4th 414, 417 n.1 (8th Cir. 2023). On appeal, Ford filed a motion to dismiss for lack of appellate jurisdiction, a motion we deferred pending oral argument and submission.

"We have repeatedly criticized the use of dismissals without prejudice to manufacture appellate jurisdiction in circumvention of the final decision rule." W. Am. Ins. Co. v. RLI Ins. Co., 698 F.3d 1069, 1071 n.1 (8th Cir. 2012). When a district court merely approves the parties' Rule 41(a)(1)(A)(ii) stipulation, it is doubtful the court has given the "clear and unequivocal manifestation . . . that the decision made . . . is the end of the case" which creates a reviewable final order under 28 U.S.C. § 1291. See Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995) (quotation omitted). However, at oral argument, counsel for Anderson & Koch agreed that the dismissal of the remaining claims relating to the change of its Locality may be modified to be *with prejudice*. Accordingly, we have appellate jurisdiction. See W. Am. Ins. Co., 698 F.3d at 1071 n.1. We deny Ford's motion to dismiss and direct the district court to modify its January 30, 2024 Order.

## II. Discussion

The district court's Order granting partial dismissal focused its analysis on the plain meaning of the three MVSDA provisions at issue:

> Anderson & Koch's primary goal in filing this lawsuit is to block the establishment of the new (and competing) Ford dealership in Forest Lake. Each of Anderson & Koch's counts seeks some form of injunction against the new dealership . . . . Anderson & Koch has not, however, invoked § 80E.14, undoubtedly because that section plainly does not give Anderson & Koch the right to block Ford's proposed new dealership . . . [which] would be over 25 miles away from Anderson & Koch's existing dealership.

In this lawsuit, Anderson & Koch is essentially trying to do an end run around § 80E.14's restrictions by relying on § 80E.13(k), which . . . prohibits a manufacturer from modifying or replacing a "franchise" if the succeeding franchise would "adversely alter the rights or obligations" or "substantially impair[] the sales or service obligations or investments" of the dealer. . . . But Anderson & Koch ignores a crucial predicate for a § 80E.13(k) claim: The MVSDA is clear that § 80E.13(k) applies only to modifications to a "franchise," and the MVSDA is equally clear that a "franchise" is "the written agreement" between a manufacturer and a dealer. See § 80E.03, subd. 8. . . . Anderson & Koch does not allege that Ford will be modifying a single word of that agreement. Anderson & Koch has therefore failed to plead a viable claim under § 80E.13(k).

Anderson & Koch also cannot use § 80E.13(p) to block the proposed Forest Lake dealership. That provision prevents a manufacturer from arbitrarily changing or assigning a dealer's area of sales effectiveness. . . . Ford's creation of a new dealership in Forest Lake -- the target of this lawsuit -- is separate from Ford's decision to change Anderson & Koch's Dealer's Locality. The former, unlike the latter, may not be challenged under § 80E.13(p). . . .

That said, Anderson & Koch has plausibly challenged Ford's decision to change its Dealer's Locality. . . . [A] modification of Anderson & Koch's Dealer Locality can plausibly be deemed to be a modification of its franchise for purposes of § 80E.13(k). . . .

Anderson & Koch also has the right to challenge the change to its Dealer's Locality under § 80E.13(p), as Ford concedes. . . . Accordingly, Ford's motion to dismiss Anderson & Koch's claims regarding the change to its Dealer's Locality is denied.

To be clear, though: Anderson & Koch cannot use § 80E.13(k) or (p) to evade the explicit procedures provided by the Minnesota Legislature for challenging a new dealership. . . . [A]llowing Anderson & Koch to use § 80E.13(k) or (p) to block the new dealership . . . would mean that Anderson & Koch would have *greater* power to block a new

dealership that is *more* than 10 miles away than it would have [under § 80E.14, subd. 1] to block a new dealership that is *less* than 10 miles away. . . . That would make no sense, and it would do violence to the scheme prescribed by the Minnesota Legislature after balancing the interests of manufacturers, dealers, and consumers.

On appeal, rather than argue that the district court's analysis is factually wrong, Anderson & Koch argues the district court misinterpreted the MVSDA provisions at issue by relying on their textual plain meaning rather than Anderson & Koch's assertions as to dealer protections the Minnesota Legislature obviously intended.[5] We review the district court's interpretation of state law and its dismissal for failure to state a claim *de novo*. See Salve Regina Coll. v. Russell, 499 U.S. 225, 231(1991); Universal Coop., Inc. v. AAC Flying Serv., Inc., 710 F.3d 790, 794 (8th Cir. 2013). We are unaware of any Supreme Court of Minnesota decisions even discussing the MVSDA issues raised on appeal. "When a state's highest court has not decided an issue, it is up to this court to predict how the state's highest court would resolve that issue." Hudson Specialty Ins. Co. v. Brash Tygr, LLC, 769 F.3d 586, 591 (8th Cir. 2014) (quotation omitted). We agree with the district court's prediction that the Supreme Court of Minnesota, applying the plain language of the MVSDA, would conclude that Anderson & Koch may not challenge the proposed new Ford dealership under § 80E.13(k) or (p). Like the district court, we conclude that Anderson & Koch's claims challenging the new dealership do not "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). We affirm the court's interpretation of the MVSDA.

---

[5]Anderson & Koch has *no* Minnesota appellate court support for its assertions. In the only Minnesota Court of Appeals decision ruling on an analogous new dealership dispute, the Court affirmed a decision in favor of the manufacturer on other grounds and noted, "we need not reach [the manufacturer's] alternative argument that the conduct alleged by [the dealer] . . . did not violate Minn. Stat. § 80E.13(k) as a matter of law." North Star Int'l Trucks, Inc. v. Navistar, Inc., No. A-12-0732, 2013 WL 1392939 (Minn. App. April 8, 2013) (unpublished).

Anderson & Koch first argues the district court erred in ruling that § 80E.14 is the exclusive mechanism to challenge a new dealership under the MVSDA. That was Ford's contention in the district court and on appeal. But the district court only held that on the facts in this case, in particular the terms of this franchise agreement, Anderson & Koch cannot challenge the establishment of this new dealership under § 80E.13(k) or (p). We do not read the district court's opinion as holding that § 80E.14 would be the exclusive mechanism to challenge a new dealership that in fact modifies or replaces a different franchise agreement with a succeeding franchise that violates the unfair practice proscription in § 80E.13(k). There is nothing in the text of § 80E.14 suggesting it is the sole mechanism to challenge a new dealership. When interpreting a statute, the Supreme Court of Minnesota "will not add words to the statute that the Legislature did not supply." Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp., 850 N.W.2d 682, 696 n.10 (Minn. 2014). We find Ford's contrary arguments less than persuasive. But we need not decide the issue given our conclusion that Anderson & Koch fails to state a claim under § 80E.13(k) or (p).

Regarding its claims under § 80E.13(k) and (p), Anderson & Koch argues that the establishment of a new dealership in an existing dealer's locality necessarily modifies the existing dealer's franchise within the meaning of subsection (k) and changes the existing dealer's "area of sales effectiveness" within the meaning of subsection (p). But that argument is based on the *effect* of establishing a new dealership, ignoring the text of statutory provisions defining particular types of tortious unfair practices by the manufacturer.

Section 80E.13(k) prohibits practices that unfairly "modify or replace a franchise with a succeeding franchise." The MVSDA expressly defines "franchise" as the Dealership Agreement. The district court concluded that Ford's establishment of a new dealership in Forest Lake would not modify "a single word" of the Dealership Agreement, which expressly provides that Ford may establish new

-10-

dealerships more than 10 miles away from Anderson & Koch's location without giving notice or showing good cause. On appeal, Anderson & Koch does not point to a single word of the Dealership Agreement that establishing the proposed new dealer would modify or replace.

Anderson & Koch contends that the change of its Locality, which the district court ruled *could* constitute a modification of the Dealership Agreement, is the "necessary by-product" of the establishment of the new dealership. This simply ignores critical differences in the MVSDA provisions at issue. We agree with the district court that Ford's Proposed Change involved two separate actions. The Dealership Agreement permitted Ford to establish the new dealership without modifying the agreement. The establishment of a new dealer did not require a change in Anderson & Koch's Locality or any other term of the agreement. Anderson & Koch has dismissed with prejudice its challenge to the reduction of its Locality under § 80E.13(k). The *only* issue on appeal is whether the establishment of the Forest Lake dealership, the other proposed change, also violated this unfair practice provision. We agree with the district court it did not.

Nor did Anderson & Koch plausibly allege that the new dealership violated § 80E.13(p), which prohibits manufacturers from "assign[ing] or chang[ing] a dealer's area of sales effectiveness arbitrarily or without due regard to the present pattern of motor vehicle sales and registrations within the dealer's market." The MVSDA defines area of sales effectiveness as "a geographic area designated in a franchise agreement . . . where a new motor vehicle dealer is responsible for effectively selling, servicing, and otherwise representing the products of the manufacturer." § 80E.03, subd. 10(b). Anderson & Koch concedes this area is "coterminous" with the term "Dealer's Locality" in the Dealership Agreement, "the locality designated in writing to the Dealer by the Company from time to time as the area of the Dealer's sales and service responsibility."

-11-

The Dealership Agreement expressly permits assigning multiple dealerships to Anderson & Koch's designated Dealer's Locality. As noted before, establishment of the proposed new dealership would not, without more, change Anderson & Koch's Dealer's Locality, the designated geographic area of sales effectiveness Ford uses to assess Anderson & Koch's performance. Thus, absent a change in Anderson & Koch's designated Dealer's Locality, locating a new dealership within that Locality, selling Ford vehicles within and outside that area, would not change the 18 census tract area that Ford uses to assess Anderson & Koch's performance.[6]

For the foregoing reasons, the judgment of the district court is affirmed.

_____

---

[6]Of course, under the Dealership Agreement, Anderson & Koch and likely the new dealer would both be free to sell and service Ford vehicles outside that area.

-12-